[Civ. No. 14223.   Second Dist., Div. Two.   Nov. 23, 1943.]

SOL ZEMANSKY, Appellant, v. BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

McLaughlin & McGinley for Appellant.

Ray L. Chesebro, City Attorney, W. Jos. McFarland and Donald M. Redwine, Assistants City Attorney, and John L. Bland, Deputy City Attorney, for Respondents.

McCOMB, J.—Appellant filed a petition in the superior court seeking a writ of mandate directing the Board of Police Commissioners of the City of Los Angeles (hereinafter referred to as the board) to issue appellant a license to conduct

a (1) pawn shop, and (2) second-hand jewelry business at 466 South Main Street, Los Angeles. This appeal is from the judgment in favor of respondents predicated upon the sustaining, without leave to amend, of their demurrer to appellant's petition.

The record of the testimony before the respondents was attached to appellant's petition, and was thus before the trial court. The evidence discloses the following material facts:

Section 24.10(b) of the Municipal Code of Los Angeles reads in part as follows:

"(b) Permit required. No person shall engage in, conduct, manage, carry on or deal in any business mentioned in subsection 'a'[1] of this section without first applying for and receiving a written permit from the Board[2] as hereafter provided.

"(c) Requisites of Permits.

"(1) Persons desiring to obtain a permit to conduct, manage or deal in any business mentioned in subsection 'a' of this Section shall file an application in writing with the Board specifying by street and number the place where such business is proposed to be conducted or carried on; junk collectors having no fixed place of business shall specify in such application their residence by street number. The application shall be signed by the applicant and shall contained his residence address. . . .

"(3) Upon receipt of such application the Board shall cause to be investigated the business of the applicant and location at which applicant proposes to engage in business as specified in said application. Thereafter the Board may issue a permit to the applicant which shall be effective for the remaining portion of the current year. . . .

"(5) No person holding a permit to conduct, manage, carry on or deal in any business mentioned in subsection 'a' of the Section shall buy, sell or otherwise deal in secondhand merchandise without first applying for and receiving a special permit therefore from the Board in the manner provided in this Section for securing ordinary permits. . . .

"(e) Compliance with Law:

"(1) The Board shall not grant any permits provided for in this Section to persons who fail, refuse or neglect to

---

[1]Section 24.01(a) defines a pawnbroker.

[2]Section 22.00 provides that whenever the word "Board" is used, it shall mean the Board of Police Commissioners unless otherwise specifically designated.

comply with the laws and ordinances relating to and regulating the business for which such permit is sought.

"(2) Persons applying for or obtaining permits under the provisions of this Section shall comply with the provisions of this Section."

Petitioner had previously been engaged in the business of a pawnbroker and dealer in second-hand jewelry as a member of a partnership consisting of himself and his brother. Their business was conducted in Los Angeles under the name of Provident Loan Association until they were adjudicated bankrupt in 1939. For fifteen or twenty years of the period in which they had engaged in business they had borrowed from Herman Cline, a captain, and part of the time Chief of Detectives in the Los Angeles Police Department, approximately $15,000. Captain Cline was paid interest upon his money at the rate of twelve per cent per annum. The Provident Loan Association during the aforesaid period borrowed money from W. J. Jolen, W. H. Caddell and W. E. Powers, all members of the Los Angeles Police Department, who received interest on their money at the rate of twelve per cent per annum. Petitioner testified that the payment of this high rate of interest was a cause of the bankruptcy of his partnership.

Money of the partnership business had also been invested in gambling houses in the State of Nevada on various occasions.

There are two questions presented for our determination which will be stated and answered hereunder seriatim.

First: *Did the Board of Police Commissioners have the implied power under section 24.01 of the Los Angeles Municipal Code to deny petitioner's application for a license to conduct the businesses of (a) pawnbrokerage and (b) dealer in second-hand jewelry upon the ground that he was not a fit and proper person to conduct such businesses?*

This question must be answered in the affirmative and is governed by the rule, that when by ordinance it is provided that a license shall not be issued until a permit has been granted by the Board of Police Commissioners, said board is vested with power to determine whether the applicant is a fit and proper person to be permitted to conduct the business for which he seeks a license. (*Co-operative Junk Co. of Cal. v. Board of Police Commissioners,* 38 Cal.App. 676, 679 [177 P. 308]; *State ex rel. Wagner v. Fields,* 218 Mo.App. 155 [263 S.W. 853, 858]; *Downes v. McClellan,* 72 Colo. 204 [210 P.

454

397] ; 37 C.J. (1925), p. 183, Licenses, sec. 28; *People ex rel. Anderson* v. *City of Chicago,* 312 Ill.App. 187 [37 N.E.2d 929].)

Second: *Was there substantial evidence to sustain the board's finding that appellant was not a proper person to engage in the (a) pawnbrokerage, and (b) second-hand jewelry businesses in Los Angeles?*

This question must also be answered in the affirmative. ■ It is a fact, of which courts take judicial notice, that second-hand stores and pawn shops constitute a ready and customary outlet for stolen property (see *Co-operative Junk Co.* v. *Police Commissioners, supra,* p. 679), which indicates that such businesses should be conducted by persons who are above suspicion. ■ It is the duty of the members of the Police Department of the City of Los Angeles to scrutinize closely the pawnbrokerage and second-hand jewelry businesses in order to recover stolen property and apprehend thieves.

In order to conserve the public welfare and to maintain a healthy morality among the police force it should be observed as an inviolable rule that there should not be any private self-serving arrangements between a police officer and the proprietor of a pawn shop and second-hand jewelry store which might in the slightest degree tend to cause such officer to neglect his duty.

It needs no argument to demonstrate that if a police officer loans large sums of money to a pawnbroker or dealer in second-hand jewelry, and receives a high rate of interest for such loan, the temptation exists for such officer to be extremely lenient and cursory in examining the manner in which the business of his debtor is conducted in order to insure that his debtor will be able to repay not only the principal amount loaned but the interest which the borrower has agreed to pay.

■ In the instant case, it appears that when appellant was previously engaged in the pawnbrokerage and second-hand jewelry businesses, he had borrowed money which was not necessary for the conduct of his business from members of the police department, and that he paid such a high rate of interest for their money that according to his own testimony it was usurious and became one of the causes of his business failure.

That appellant has invested funds in various gambling enterprises is not an ornament to the character of one who offers himself as a ward of the police. The success of a gambling

venture is at its best precarious. In no event does it contribute to the moral or material welfare of the state.

From the foregoing facts the board was clearly justified in drawing an inference that appellant accepted loans from members of the police department and paid them a high rate of interest on the expectation that they would not scrutinize too closely the manner in which he conducted his business or be overly careful in examining the character of his customers.

Since appellant had in the past evinced a disposition to influence improperly members of the Los Angeles Police Department and to invest his funds in gambling enterprises, the board was justified in drawing the inference that if permitted to conduct a pawn shop or deal in second-hand jewelry, he would conduct his business along the same line as he had previously done with the resulting probability that (1) a sinister influence would be exerted upon members of the Los Angeles Police Department, and (2) the funds of his business would be invested in gambling ventures and dissipated, with the result that his business might again be placed in the hands of the bankruptcy court. Thus the board's finding that appellant was not a fit and proper person to have the permit he sought was sustained by substantial evidence.

For the foregoing reasons, the judgment is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1944.