689 A.2d 1254

**George G. LINKUS, Jr.**

v.

**MARYLAND STATE BOARD OF HEATING VENTILATION, AIR-CONDITIONING AND REFRIGERATION CONTRACTORS.**

**No. 753, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Feb. 28, 1997.

264

Steven D. Shemenski (Turnbull, Mix & Farmer, Towson, and Charles L. Waechter, Arbutus, on the brief), for appellant.

Sloane Fried Kinstler, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Argued before CATHELL, SALMON and EYLER, JJ.

EYLER, Judge.

This appeal is by George G. Linkus, Jr., appellant, from a decision of the Circuit Court for Baltimore City affirming the denial by the Maryland State Board of Heating, Ventilation, Air-Conditioning and Refrigeration Contractors (the Board), appellee, of appellant's application for a master's license, pursuant to Md.Code Ann., Bus. Reg., § 9A–306 (1992 and 1996 Supp.) Appellant presents one issue for our review:

> Did the State Board of Heating, Ventilation, Air–Conditioning and Refrigeration Contractors make an error of law in refusing appellant a Master's license due to his rape conviction six years earlier?

## Statement of Facts

The parties proceeded in circuit court on a statement of facts in lieu of a transcript of the administrative proceedings, pursuant to Rule 7–206(b); they proceed in this Court on the same statement of facts and without a transcript of the argument in the circuit court. Appellant testified at the hearing before the Board but did not call any other witnesses. The record does not contain a transcript of his testimony or any reference to his testimony other than as referenced herein.

Appellant filed an application for a master's license "qualifying review" with the Board on August 31, 1993. On the application, in response to an inquiry as to whether appellant had ever been convicted of a felony, appellant checked the box, "No." Upon the Board's initial review of appellant's credentials, the Board approved appellant for the issuance of a master's license. On or about October 9, 1994, the Board received from the Maryland State Department of Licensing and Regulation appellant's "Application for Original Li-

cense/Certificate." On that form, dated October 9, 1994, appellant indicated "Yes" in response to a question as to whether he had ever been convicted of a felony. Appellant subsequently provided the Board with a statement indicating that he had been convicted of a felony, disclosing that he had been released from probation in March, 1994 without identifying the nature of the offense. Appellant testified that he initially indicated that he had not been convicted of a felony on the advice of an attorney and his belief that his release from probation permitted him to respond in that manner.

On January 18, 1995, appellant was notified by mail that his application had been denied. The Board "determined in accordance with § 9A–310(a)" that appellant's conviction disqualified him for a heating, ventilation, air-conditioning and refrigeration (HVACR) license and informed appellant that he had ten days to request a formal hearing. Appellant did so, and a hearing was held on March 22, 1995, pursuant to Md.Code Ann., Bus. Reg. § 9A–311 [1] and COMAR .09.01.02.01 et seq. By written order dated May 10, 1995, the Board affirmed its denial of appellant's application. Records from the Circuit Court for Baltimore County, introduced as exhibits in the administrative proceeding, reflect that appellant was convicted in July 1989, of second-degree rape, in violation of Md.Code Ann., art. 27, § 463, and was sentenced to five years incarceration, all but eighteen months suspended, and five years probation. On October 31, 1989, the non-suspended 18–month term was modified and appellant began serving probation on that date. The probationary period originally was to continue through August 15, 1995, but appellant was granted early termination and discharge from probation, terminating on April 26, 1994. In addition, appellant received court-ordered counseling.

The record does not reveal the circumstances surrounding appellant's conviction except for the statement in the Board's Order that, while appellant's conviction "was not an on-the-job

---

1. Hereinafter, all references to the Business Regulation Article will be abbreviated "Bus. Reg."

occurrence and did not directly involve the provision of HVAC services, his conduct does constitute a personal sexual assault against the victim." The Board, in its "Findings of Fact," stated, in part:

[Appellant's] work certification indicates that he has been employed by his father's company, Linkus Refrigeration Company, Inc., since 1973 as an HVACR Mechanic. Mr. Linkus clarified through testimony, that prior to his incarceration in July, 1989, Mr. Linkus, now 39 years old, had been employed by Linkus Refrigeration Company, Inc. since 1973. Mr. Linkus returned to his employment with Linkus Refrigeration Company, Inc. upon his release in October 1989 and worked there throughout his five-year probation.

Mr. Linkus testified that his duties with Linkus Refrigeration Company's [sic] include work at apartment complexes where Mr. Linkus is authorized to enter residential homes to provide heating, ventilation, air conditioning and refrigeration services. He is given a passkey, providing him access into individual apartments to conduct his work. Mr. Linkus further testified that Linkus Refrigeration Company permits him to work independently and unsupervised in these homes.

In addition to "Findings of Fact," the Board's Order contained the subheadings, "Discussion" and "Conclusions of Law." The latter two sections provide:

### Discussion

Mr. Linkus does not contend that he was not convicted of second-degree rape or that the crime is not a felony. The issue before the Board is whether Mr. Linkus may be granted a master HVAC license. The stated purpose of the statutory provisions requiring licensure of HVAC contractors is to protect the public. Bus. Reg. Art., *Ann.Code of Md.*, 9A–102(1).

Mr. Linkus' attorney argued that Mr. Linkus, who would be working with his father and brother as he did prior to his

conviction, feels he can "conduct his duties in a moral manner." Mr. Linkus testified that he falsely indicated on his initial application that he had not been convicted of a felony because he believed his release from probation permitted him to so state and he did so on the advice of his attorney.

The Board considers the crime of second-degree rape a serious one. The Board believes responsibility and dependability are essential for a master HVAC contractor. The public relies on the trustworthiness of contractors who enter their homes. Therefore, licensure by the Board of an individual convicted of a crime involving a sexual assault of this nature is especially problematic for the Board. While Mr. Linkus' offense was not an on-the-job occurrence and did not directly involve the provision of HVAC services, his conduct does constitute a personal sexual assault against the victim.

Moreover, that Mr. Linkus initially concealed the fact of his criminal conviction is equally troublesome to the Board as it is suggestive of a violation of Bus. Reg. Art., *Code Ann. of Md.,* § 9A–310(1) which provides, in part, that the Board may deny or revoke a license to any applicant if the Board finds the individual obtained the license by fraud or fraudulent representation. While the Board finds problematic Mr. Linkus' explanation for his initial denial of any criminal conviction on his application, the Board acknowledges that Mr. Linkus subsequently accurately indicated his criminal status to the Board.

Mr. Linkus argued that the Board cannot deny him a license because the Bus. Reg. Art., *Ann. Code of Md.,* Title 9A does not specifically provide that conviction of a felony shall be a bar to a license. However, the Attorney General of Maryland has opined that

> licensing agencies of the Department of Licensing and Regulation [such as the HVAC Board] are empowered, whether by specific statutory enactment or by administrative rule, to rely on an applicant's criminal record in

determining whether such person should be issued a license....

57 Op. Att'y Gen. 335, 340–341 (1972). There, the Attorney General suggested that the licensing agency consider the amount of time which may have elapsed since the conviction, the nature of the offense and whether it has a rational connection with the applicant's fitness or capacity to perform the occupation. *Id.* at 341.

At the hearing, Mr. Linkus maintained that his conviction does not bear any connection to HVAC services. Had he been convicted of theft, embezzlement or falsification of records, he argued such offenses would bear a relationship to his fitness to provide HVAC services. That Mr. Linkus' offense does not involve a crime against property or a crime of moral turpitude, but rather a crime against a person, does not persuade the Board that the nature of the crime at issue is less serious. Rather, the Board can think of no greater example of when a criminal conviction may be thought to relate to the applicant's fitness for an occupational license than rape. The master license sought by Mr. Linkus will permit him to enter residential homes to work, unsupervised. The State-issued license carries with it the State's sanction of Mr. Linkus' fitness to provide HVAC services, to be relied upon by the citizens of Maryland.

The amount of time that has elapsed since Mr. Linkus' 1989 conviction is just under six (6) years. The Board believes that it would be inappropriate for it [to] grant Mr. Linkus' application for a master license at this time, under the circumstances of this case.

### *Conclusions of Law*

Based on the Findings of Fact, and using the specialized knowledge, training and experience of its several members, the State Board of Heating, Ventilation, Air-conditioning and Refrigeration Contractors reaches the following conclusions as a matter of law:

The Applicant, George J. Linkus, Jr. fails to qualify for a master license pursuant to Bus. Reg. Art., *Ann.Code of Md.,* § 9A–308 given the circumstances of his 1989 felony rape conviction.

Appellant filed a petition for judicial review of the Board's decision in the circuit court. After oral argument on January 17, 1996, the circuit court issued a memorandum and order on March 18, 1996, affirming the Board's order and accepting the Board's contention that the enabling statute "authorizes [the Board] to review the background of an individual applying for a license and to deny licenses to those persons whose backgrounds the Board concludes pose a threat to the public at large, under the language of the statute...." Appellant has now filed an appeal to this Court.

## Standard of Review

The Board's decision is subject to review under the Maryland Administrative Procedure Act, codified at MD.CODE ANN., STATE GOV'T § 10–101 *et seq.* (1995 & Supp.1996). Appellant does not challenge the Board's findings of fact but, instead, argues that the Board acted outside the scope of authority conferred upon it by the Legislature, therefore, raising a question of law. The Board's conclusions of law are not entitled to any deference upon review. *Ahalt v. Montgomery County,* 113 Md.App. 14, 22, 686 A.2d 683 (1996).

Were this a case dependent upon issues of technical expertise or an interpretation of the Board's own internal regulations, we would generally defer to the interpretation of the Board. *See Department of Health & Mental Hygiene v. Reeders Memorial Home, Inc.,* 86 Md.App. 447, 453, 586 A.2d 1295 (1991). We cannot do so when an agency is deciding an issue of law. *Id.* at 452, 586 A.2d 1295.

## Analysis

The right of an individual to engage in a lawful occupation has long been recognized. *Singer v. State,* 72 Md. 464, 465, 19 A. 1044 (1890). It is also well settled, and acknowledged in *Singer,* that a person's right to engage in any

lawful occupation is subservient to the legitimate right and duty of the state to protect the health, safety, and welfare of its citizens, through the valid exercise of its police power. *Id.* at 466, 19 A. 1044. All occupational licensing emanates from this authority. For the greater good of the public at large, a state, under its police power, is free to place certain restrictions upon those who wish to enter or practice a particular occupation.

◼ The broad authority of the state to place restrictions upon those who wish to pursue an occupation is not without limitation, however. In order to prevent arbitrary and capricious use of this power, due process and equal protection require that any regulation of a business must bear a reasonable and rational relationship to the state's objective. *See Massage Parlors, Inc. v. Mayor & City Council of Baltimore,* 284 Md. 490, 398 A.2d 52 (1979). (citing the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights). While this "rational relationship test," as it is commonly known, may be a fairly easy burden for the state to meet, these constitutional considerations do not represent the sum and substance of the limitations placed upon an occupational licensing board's actions, this appeal being a case-in-point. While appellant does not raise a constitutional claim in his challenge of the Board's authority to withhold a license, he does raise an issue concerning the limitation of the licensing authority with respect to the discretion given to it by the Legislature. The issue before us is solely one of statutory interpretation, *i.e.,* was the Board acting within its legislative mandate when it denied appellant a license? The issue can be stated in two parts: (1) was the Board acting within its express authority, and (2) if not, was the Board acting within its implied authority?

### A. *General Principles of Statutory Construction*

◼ "The cardinal rule of statutory construction is to ascertain and carry out the actual intent of the Legislature." *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994). The task of statutory interpretation begins with

the ordinary and natural meaning of the words employed. If the language is plain and free from ambiguity and expresses a definite and sensible meaning, there is no need to look elsewhere to ascertain the intent of the legislative body. *Director of Finance v. Charles Towers Partnership*, 104 Md.App. 710, 717–18, 657 A.2d 808, *cert. granted sub nom., Cheaspeake Tel. v. Director of Finance*, 340 Md. 268, 666 A.2d 144 (1995), and *aff'd*, 343 Md. 567, 683 A.2d 512 (1996).

Although the language of the statute is the primary indicator of legislative intent, we must examine the entire statutory scheme and consider the purpose behind the enactment. Further, we must read all parts of a statute together. *Ward v. Dept. of Public Safety*, 339 Md. 343, 351–52, 663 A.2d 66 (1995); *Department of Public Safety & Correctional Services v. Howard*, 339 Md. 357, 369, 663 A.2d 74 (1995). We will consider not only the literal meaning of language but its meaning and effect in light of its setting and the objectives of the enactment. *Prince George's County v. Brown*, 334 Md. 650, 659, 640 A.2d 1142 (1994). Cognizant that the language of the statute is the foundation from which our inquiry commences, we also will review legislative history and the prior state of law and contemplate the particular evil, abuse, or defect that the Legislature wished to remedy with the enactment of the statute at issue. *Lemley v. Lemley*, 102 Md.App. 266, 290, 649 A.2d 1119 (1994).

> The legislative history of a statute, including amendments that were considered and/or enacted as the statute passed through the Legislature, and the statute's relationship to earlier and subsequent legislation are "external manifestations" or "persuasive evidence" of legislative purpose that may be taken into consideration.

*Rose v. Fox Pool Corp.*, 335 Md. 351, 360, 643 A.2d 906 (1994). Moreover, the examination of related statutes is not beyond our reach. *GEICO v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713 (1993).

### B. *Discussion*

#### (1)

The statute creating, regulating, and empowering the Board can be found within Bus. Reg. §§ 9A–101 to 9A–602. The Board argues that, under Bus. Reg. § 9A–102(1), it was granted broad discretionary authority to "protect the public" through the licensing of HVACR contractors. Section 9A–102 states in full that:

> The purpose of this title is to establish a licensing program for individuals who provide or assist in providing heating, ventilation, air-conditioning, and refrigeration services to:
>
> (1) protect the public;
>
> (2) provide and maintain efficient and safe systems;
>
> (3) promote high professional standards; and
>
> (4) ensure that qualified individuals carry out subsections (1), (2), and (3) of this section.

This mandate, the Board concludes, allows it to consider evidence of character, *e.g.*, appellant's rape conviction, as grounds on which to deny a license. The statutory provision applicable to denial of a license appears in Bus. Reg. § 9A–310, which states that:

> The Board may deny a license to any applicant, reprimand any licensee, or suspend or revoke a license after a public hearing conducted in accordance with the provisions of 9A–311 of this title, if the Board finds that the individual:
>
> (1) obtained a license by false or fraudulent representation;
>
> (2) transferred the authority granted by the license to another person;
>
> (3) willfully or deliberately disregarded and violated the code established by the Board under this title;
>
> (4) willfully or deliberately disregarded and violated building codes, electrical codes, or laws of the State or of any municipality, city, or county of the State;

(5) aided or abetted a person to evade a provision of this title by allowing a license to be used by an unlicensed person, firm, or corporation;

(6) willfully or deliberately disregarded disciplinary action taken by a municipality, city, or county against the individual in connection with providing heating, ventilation, air-conditioning, or refrigeration services;

(7) abandoned or failed to perform, without justification, any contract or project to provide heating, ventilation, air-conditioning, or refrigeration services;

(8) performed work under a heating, ventilation, air-conditioning, or refrigeration services contract or project that is inadequate or incomplete;

(9) directly or indirectly published any advertisement relating to the providing of heating, ventilation, air-conditioning, or refrigeration services that contained an insertion, representation, or statement of fact that is false, deceptive, or misleading;

(10) made any material misrepresentation in the procurement of a heating, ventilation, air-conditioning, or refrigeration services contract or project; or

(11) failed in any material respect to comply with the provisions of this title.

As additional authority to disqualify appellant based on his 1989 rape conviction, the Board focuses upon the language of Bus. Reg. § 9A–310(4), which allows denial of a license based upon evidence that an applicant "willfully or deliberately disregarded and violated building codes, electrical codes, *or laws of the State* or of any municipality, city, or county of the State." (Emphasis added). The crux of the Board's assertion is that each phrase within "building codes, electrical codes, or laws of the State" is to be read independently, meaning that any willful or deliberate violation of a building code, an electrical code, or any law of the State is within the scope of the statute. The Board concludes that, due to the *mens rea* element of rape, appellant's conviction was a willful violation of Maryland law; hence the strictures of Bus. Reg. § 9A–310(4) are satis-

fied. Because of the serious nature of rape, appellant's license was denied because it would "permit him to enter residential homes to work, unsupervised." [2]

Appellant construes Bus. Reg. § 9A–310(4) differently. Appellant asserts that the terms are to be read interdependently, meaning that the statute should be read to mean any willful or deliberate violation of any building code, any electrical code, or any similar law. Because his rape conviction is unrelated to any building or electrical law of the State, it is therefore outside the scope of the Board's investigatory consideration and, thus, an impermissible basis upon which to deny his license.

■ Our discussion begins with an examination of the statute itself. As is true for all administrative agencies, the HVACR Board's authority to act is defined by what expressly or impliedly has been given to it by the Legislature. *See Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 466, 620 A.2d 340 (1993); *Brzowski v. Md. Home Improvement Comm.*, 114 Md.App. 615, 691 A.2d 699 (1997); *Northwest Land Corp. v. Maryland Dep't of Env't*, 104 Md.App. 471, 487–88, 656 A.2d 804 (1995).

■ As stated above, our goal in interpreting a statute is to discern and effectuate legislative intention. Various rules of construction have been recognized as aids in that process. If the intended purpose of a statute and its language are clear and consistent, we ordinarily can end our analysis at that point. If the legislative intent is clear, although the language may not plainly state the intent, we construe the language so as to effectuate the intent if it is capable of such construction. In those instances, the rules of construction are useful, but primarily to explain the predetermined goal. If, as in the case before us, we are uncertain as to the legislative intent, then

---

2. Appellee does not reconcile this conclusion with its earlier finding that appellant, in his current occupation as a HVACR mechanic, has been and continues to work in residential areas unsupervised, as an employee of Linkus Refrigeration Company.

the rules of construction applied to the language used in the statute lead us to the result. *See Taylor v. Friedman,* 344 Md. 572, 689 A.2d 59 (1997).

The Legislature is the law-making branch of government. We are not permitted to be concerned with the wisdom, need, or appropriateness of legislation as long as it is within constitutional limitations. We may not substitute our judgment for that of the Legislature and rewrite legislation even if we disagree with it. Nor are we free to amend a statute under the guise of statutory construction. *See Maryland–National Capital Park & Planning Comm'n v. State Dep't of Assessments & Taxation,* 110 Md.App. 677, 700, 678 A.2d 602 (1996), and *Conaway v. State,* 108 Md.App. 475, 672 A.2d 162 (1996). If we believe there is a problem with particular legislation, we are limited to calling the Legislature's attention to it.

Taken in isolation, the phrase in Bus. Reg. § 9–310(4), on which the Board relies, supports its interpretation. We cannot read "laws of the State" in § 9A–310(4) in isolation, however, but must consider it in the context of the entire statutory scheme, because Title 9A was enacted in its entirety rather than in a piecemeal fashion. *See Comptroller of the Treasury v. John C. Louis Co.,* 285 Md. 527, 538, 404 A.2d 1045 (1979) ("[I]t is not proper to confine interpretation to the isolated section to be construed." *Id.*). Considering the language of Bus. Reg. § 9A–310(4) in the context of the entire act, and employing certain well-settled principles of statutory construction, we conclude that appellant's interpretation of § 9A–310(4) is the correct interpretation.

Under the doctrine of *ejusdem generis,* when general words in a statute follow the designation of particular things, classes, or subjects, the general words will usually be construed to include only those things, classes, or subjects in the same general nature as those specifically mentioned. *In re Wallace W.,* 333 Md. 186, 190, 634 A.2d 53 (1993) (quoting

*Giant of Maryland v. State's Attorney,* 274 Md. 158, 167, 334
A.2d 107 (1975)).

 Under the doctrine of *reddendo singula singulis,*
when a sentence in a statute contains several antecedents and
several consequents, such as in Bus. Reg. § 9A–310(4), they
are to be read together. This doctrine, better known in other
jurisdictions as the "last antecedent rule," *see, e.g., Boeing Co.
v. State, Dep't of Licensing,* 103 Wash.2d 581, 693 P.2d 104,
108 (1985), has been applied in Maryland under the more
cumbersome name of "the principle of statutory construction
'that a qualifying clause ordinarily is confined to the immedi-
ately preceding words or phrase.'" *Employment Sec. Admin.
v. Weimer,* 285 Md. 96, 100, 400 A.2d 1101 (1979) (quoting
*Sullivan v. Dixon,* 280 Md. 444, 451, 373 A.2d 1245 (1977)).

 Applying the principles discussed above, the phrase
"laws of the State" in Bus. Reg. § 9A–310(4) means laws
similar to building codes or electrical codes.[3] To interpret it
without such limitation would mean that the Legislature em-
powered the Board to deny a license based upon the violation
of any State law, a result inconsistent with the statutory
scheme.

Similarly, when we consider the language of Bus. Reg.
§ 9A–102(1) in the context of the entire act, we cannot read it
as broadly as the Board urges. As noted previously, all
licensing statutes delegate police power and are designed to
protect the public. The statement to that effect in Bus. Reg.
§ 9A–102(1) is simply a recognition of that fact and does not
purport to delegate the entire police power of the State to the
Board. We must look to the specific delegation of powers
contained in the body of the statute. The question is the
nature and extent of the delegation. The HVACR act in Title
9A is expressly concerned with the need to determine whether

---

**3.** We also note that the Board is limited to a consideration of violations
of laws of this State—not any state. As discussed later, the rationale for
this and other distinctions made by the Legislature is not readily
apparent to us.

an individual possesses the technical qualifications necessary competently to install and service HVACR systems.[4] *See* Bus. Reg. § 9A–310.

---

**4.** Not only is the Board not expressly empowered to consider moral character or criminal convictions other than as they may be relevant to one of the subsections in Bus. Reg. § 9A310, such considerations play no part in the nature of the exemptions from licensing contained in Bus. Reg. § 9A–103:

**Scope of title.**

This title does not limit the right of

(1) an individual owner of a single-family dwelling while that owner is practicing heating, ventilation, airconditioning, or refrigeration services on or within a building or structure owned by the individual;

(2) an individual who is building a single-family dwelling in which that individual will reside while practicing heating, ventilation, air-conditioning, or refrigeration services on or within that dwelling;

(3) an employee of a public utility company regulated by the Public Service Commission, when engaged in:

(i) the development, construction, maintenance, or repair of electric or gas facilities located in the State; or

(ii) the construction, maintenance, or repair of electric or gas appliances in the service area of the public utility;

(4) subject to § 9A–403(a) of this title, an employee of the United States government, the State government, a local government, or an independent agency while that employee is practicing heating, ventilation, air-conditioning, or refrigeration services on or within buildings or structures owned or solely occupied by the United States government, the State government, a local government, or an independent agency;

(5) an individual employed in the installation, maintenance, alteration, repair, or replacement of self-contained heating, air-conditioning, refrigeration, or ventilation systems, or other appliances requiring not more than 225 volts or 25 amps of electrical current;

(6) an individual possessing a master electrician's license issued by the State or any county, when engaged in the installation, alteration, service, repair, or replacement of individually controlled electric resistance heat;

(7) an individual possessing a master plumber's license issued by the State, Baltimore County, or the Washington Suburban Sanitary Commission when providing heating, ventilation, air-conditioning, or refrigeration services on hydronic heating systems;

(8) an individual possessing a license to practice engineering when providing heating, ventilation, air-conditioning, or refrigeration services in connection with the practice of engineering;

(9) an individual who installs, alters, remodels, maintains, or repairs oil burners exclusively while employed by a supplier of home heating fuel; or

The legislative history of the act supports our interpretation. When the HVACR act was initially proposed, the Board was intended to be an advisory board to the Maryland Home Improvement Commission (HIC), operating under the auspices of the home improvement act. *See* legislative bill file for H.B. 1386 (1992) (corresponding to ch. 649, Laws of Maryland (1992), enacting the HVACR act). This former scheme was rejected by the Assembly, changed completely, and submitted in substantially the same form in which it was finally adopted as Title 9A. The home improvement act, Bus. Reg. § 8–101 to 702. Bus. Reg. § 8–303(c), in delineating the qualifications for home improvement license applicants, specifically states that

> To evaluate the qualifications of an applicant for a license, the [Home Improvement] Commission may ask the applicant for:
>
> (1) information about the applicant's character, experience, and financial stability.
>
> (2) any other information that the Commission needs.

By contrast, the qualifications section of the HVACR act does not include a reference to an applicant's character. Instead, it focuses exclusively upon an applicant's HVACR on-the-job experience for a specified time period and the passing of a Board-administered examination. Further, Bus. Reg. § 8–311, the HIC parallel to Bus. Reg. § 9A–310, expressly states that a license may be denied if the applicant "is convicted of a felony." Bus. Reg. § 8–311(a)(5). As originally proposed, the HVACR act would have been a part of the HIC act and presumably HVACR applicants would have been subject to the same provisions for denial and qualifications as are HIC applicants. It is logical to conclude that, by enacting the HVACR act in its current form, the Legislature intended to grant narrower powers of discretion to the HVACR Board

---

(10) an individual regularly employed by the owner of property, or the owner's agent, to engage in maintenance and repair work.

Persons exempt include persons employed by suppliers of home heating oil, persons "regularly employed" by owners of property (such as any apartment complex), or employees of a public utility, even though such persons are not subject to any other licensing board.

than it previously had granted to the HIC Board. Instead of using the HIC language, the Legislature modelled the language in Bus. Reg. § 9A–310(4) after parallel sections addressing the licensing of plumbers and electricians.[5] The parallel provision of the statute governing the denial of a master electrician's license, Md.Code Ann., Bus. Occ. & Prof. § 6–316 (1995 Repl.Vol., 1996 Supp.),[6] contains the same language as the HVAC act.[7] There is a difference in the parallel section of the statute denying licenses in the plumbing trade, Bus. Occ. & Prof. § 12–312(4), which provides that:

> Subject to the hearing provisions of § 12–313 of this subtitle, the [Plumbing] Board may deny a license to any applicant, reprimand and licensee, or suspend or revoke a license if the applicant or licensee:
>
> (4) *is guilty of violating the State Plumbing Code or applicable local plumbing code while providing services or assisting in providing plumbing services*

(Emphasis added.) The plumbing statute is even more restrictive and expressly states that only plumbing violations are relevant.

---

5. The HVACR act was sponsored by Rep. Curran, representing the 43rd legislative district in the House of Delegates. In his written address recommending the bill's passage, he noted that "The language in the bill generally follows the language in the code applicable to other licensing statutes, such as plumbing and electricians." *See* legislative bill file for H.B. 1386 (1992) (corresponding to ch. 649, Laws of Maryland (1992), enacting the HVACR).

6. Hereinafter, all citations to the Business Occupations and Professions Article will be abbreviated "Bus. Occ. & Prof."

7. **Denials, reprimands, suspensions,and revocations—Grounds; evidence.**

(a) *Grounds for State Board action.*—Subject to the hearing provisions of § 6–317 of this subtitle, the State Board may deny a State license to any applicant, reprimand any State licensee, or suspend or revoke a State license if the applicant or State licensee;

. . . .

(5) willfully or deliberately disregards and violates a building code, electrical code, or law of the State or a local jurisdiction.

Based on a review of the legislative history, we conclude that the Legislature did not intend to grant power to the Board to consider an applicant's general character or prior criminal convictions unrelated to the subsections contained in Bus. Reg. § 9A–310. The focus of the HVACR act is to guarantee that those who possess a Maryland HVACR license have a minimal degree of competency and experience, through creation of a Board to define and enforce those technical standards by required inspection of work and licensing. The HVACR act was expressly patterned on the electricians' and plumbers' licensing provisions, both restrictive in nature. This is in contrast to the home improvement act, where, as noted previously, the HIC is expressly empowered to consider issues of general character. The home improvement act, however, does not empower the HIC to inspect for competency, quality, and compliance. There are, in fact, no technical regulations for the HIC to enforce, as a home improvement license is a license to do business, not a statement that a license holder is particularly skilled. An HVACR master's license is, by definition, a certificate of proficiency in that trade, such as that of an electrician or plumber.

## (2)

The Board argues in the alternative that it, like all licensing boards granted discretionary licensing authority, possesses the implied authority to evaluate whether an applicant is a fit and proper person of good character, absent specific statutory restriction to the contrary. Noting that there are no Maryland cases in support of this proposition, the Board cites three cases from other jurisdictions, *Santoro v. Mirshel*, 184 Misc. 666, 55 N.Y.S.2d 328 (N.Y.1945); *Zemansky v. Board of Police Comm'rs*, 61 Cal.App.2d 450, 143 P.2d 361 (1943); *State ex rel. Roberts v. Knox*, 153 Fla. 165, 14 So.2d 262 (1943), respectively.

Dealing with each in turn, we first note that *Santoro* does not support the proposition stated. In *Santoro*, a short two-page opinion that cites no authority, a restaurant had acquired a bad reputation in the local community. *Santoro*, 55

N.Y.S.2d at 329. The local municipality denied the owner a renewal of his restaurant license on the grounds that he was an unfit and improper person. *Id.* He responded by stating that the municipality's restaurant licensing ordinance did not expressly provide for revocation based upon reputation. The New York court affirmed the revocation, noting that, while the town ordinance did not expressly provide for revocation based on character, the New York statute granting and directing the municipalities' licensing authority did use that express language. *Id.* at 330. Therefore, the court reasoned, since the enabling New York State statute allowed municipalities to consider character as grounds for revocation, a particular local ordinance need not repeat the same language to be valid, since it was made in reliance on that state statute. *Id.* The Board points to no Maryland statute of general application from which this authority could be implied; thus, this case cannot support its contention.

In *Zemansky,* a pawn broker's license was revoked, in part because he was not a "fit and proper person," though character was not a stated ground for revocation within the licensing statute. *Zemansky,* 143 P.2d at 363. The California Court of Appeal (the California District Court of Appeal at that time), without explanation, stated that it could be implied that the Board of Police Commissioners had the discretion to consider character when denying a license, though the statute was silent on the subject. *Id. Zemansky,* however, limited its holding to licenses granted by the Board of Police Commissioners. *Id.* As support, the Court in *Zemansky* relied on *Co–Operative Junk Co. v. Board of Police Commissioners,* 38 Cal.App. 676, 177 P. 308 (1918). In *Co–Operative Junk Co.,* the California court stated the general rule that licensing authorities only have that authority given them by express provision of law, and any licensing authority's act outside the scope of that express authority is invalid. *Id.* 177 P. at 309. The California court reasoned in *Co–Operative Junk Co.,* however, that, when the licensing body is the Board of Police Commissioners, it will be presumed that, unlike all other occupations, the occupations subject to licensure by that agen-

cy are ones requiring regular police supervision. *Id.* The Courts in *Zemansky* and *Co–Operative Junk Co.* specifically limited its holdings to such occupations.

*State ex rel. Roberts v. Knox,* 153 Fla. 165, 14 So.2d 262 (1943), is inapposite and need not be discussed at length. In that case, the electricians licensing board for the City of Miami was accused of denying a license arbitrarily and capriciously. *Id.* 14 So.2d at 262–63. The Supreme Court of Florida was not presented with the issue of the implied authority of a licensing board to consider character absent clear statutory authority.

Finally, the Board relies on the rationale contained in 57 Op. Att'y Gen. 335 (1972), which addresses the question of whether various State licensing agencies may consider an applicant's criminal record. Again, we need not discuss this advisory opinion at length. The Attorney General's discussion is expressly predicated upon those licensing statutes, the language of which, at a minimum, require or permit a determination of "good moral character." Many statutes expressly permit consideration of criminal convictions. If the language of the HVACR act required or permitted a determination of "good moral character," this discussion would have ended much earlier. In that event, the Board could consider prior criminal convictions as evidence of moral character and make a determination of character as of the time of the application. A similar result would follow if the Board were empowered to base its decision on a prior criminal conviction of a felony.

Again, after reviewing the relevant authority, we must conclude that the Legislature did not intend the Board to be delegated this broad authority. To hold that any and all boards given some type of discretion in granting a trade license are also by default vested with the discretionary power to evaluate an applicant's general moral character is inconsistent with the fact that the Legislature has given detailed express authority to licensing authorities that varies from occupation to occupation. In some instances, to be qualified,

an applicant must be of good character and reputation [8]; in

8. *See* Bus. Occ. & Prof. § 2–315 and § 2–302(b) (Board of Public Accountancy may deny a license if applicant received probation before judgment with respect to, or was convicted of, or pled guilty to, a felony, or a crime involving an element of fraud or other dishonesty; applicant must be of "good character and reputation");

Bus. Occ. & Prof. § 3–311(b) and § 3–303(b) (Board of Architects *shall* deny a license if applicant receives probation before judgment with respect to, or is convicted of, or has admitted in writing under oath to a crime involving moral turpitude or a violation of any election law of the state; applicant shall be of "good character and reputation");

Bus. Occ. & Prof. § 7–309 (Board of Foresters may deny a license if applicant receives probation before judgment with respect to, or is convicted of, or pleads guilty to, a crime involving moral turpitude or a violation of any election law of the state);

Bus. Occ. & Prof. § 9–310 (Board of Examiners of Landscape Architects may deny a license if applicant receives probation before judgment with respect to, or is convicted of, or pleads guilty to, a crime involving moral turpitude or a violation of any election law of the state);

Bus. Occ. & Prof. § 10–207 (Board of Law Examiners applicants shall be of "good character and reputation");

Bus. Occ. & Prof. § 4–314 (State Board of Barbers is not authorized to consider moral character or reputation or criminal convictions generally; Board is permitted to consider whether individual "habitually is intoxicated or under the influence of any drug");

Bus. Occ. & Prof. § 5–314 (Board of Cosmetologists is authorized to consider whether an individual is "addicted to alcohol or drugs to the extent of being unfit to practice cosmetology" and the Board may consider whether an applicant "engages in dishonest, unethical, immoral, or unprofessional conduct");

Bus. Occ. & Prof. § 13–302 (Superintendent of State Police is authorized to consider "good character and reputation" in the licensing of private detectives);

Bus. Occ. & Prof. § 14–317 and § 14–304 (Board for Professional Engineers may deny a license if the applicant receives probation before judgment with respect to, or is convicted of, or pleads guilty to, a crime involving moral turpitude or a violation of any election law of the state; applicant must be of "good character and reputation");

Bus. Occ. & Prof. § 8–310 and § 8–302 (Board of Certified Interior Designers may deny a license if the applicant receives probation before judgment with respect to, or is convicted of, or has admitted in writing under oath to a crime involving moral turpitude or a violation of any election law of the state; applicant must be "of good character and reputation");

Bus. Occ. & Prof. § 15–318 and § 15–304 (Board for Professional Land Surveyors may deny a license to an applicant who receives probation before judgment with respect to, or is convicted of, or has admitted in writing under oath to a crime involving moral turpitude or

other instances, as is true of the HVACR act, there is no such qualification.[9]

Generally, the Legislature has authorized particular boards, after considering the factors enumerated in the relevant empowering statute, to exercise discretion and consider the general character of the applicant. In some instances, however, a particular board's discretion is limited. As is apparent from footnote 8, the majority of boards are authorized to at least consider moral character and reputation. With respect to

---

a violation of any election law of the state; applicant must be of "good character and reputation");

Bus. Occ. & Prof. § 16–701 and § 16–302 (the Commission of Real Estate Appraisers may consider if applicant was convicted of a crime related substantially to the qualifications of an appraiser; applicant must be of "good character and reputation");

Bus. Occ. & Prof. § 17–322, § 17–303, and § 17–304 (the Real Estate Commission, in licensing brokers and salespersons, may consider if the applicant was convicted of or received probation before judgment with respect to a crime involving moral turpitude or a crime that constitutes a violation of Title 17; applicant must "be of good character and reputation");

Bus. Occ. & Prof. § 18–309 and § 18–302 (Superintendent of State Police, in considering licensing of security systems technicians, may consider if the applicant was convicted of a felony, theft offense, or crime of moral turpitude; applicant must be of "good moral character");

Bus. Reg. § 9–305 (Commissioner of Labor & Industry, in licensing employment agencies, may consider "moral character");

Bus. Reg. § 11–308 (State Racing Commission may deny license for any reason Commissioners consider sufficient);

Bus. Reg. § 12–209 (Secretary of Licensing & Regulation may deny license to precious metals dealers or pawnbrokers if applicant convicted of a felony, theft offense, or crime of moral turpitude).

9. *See* Bus. Occ. & Prof. § 11–409 (Board of Pilots is not authorized to consider moral character or reputation or prior criminal convictions unrelated to the Board's rules and regulations);

Bus. Reg. § 4–310 and § 4–412 (State Athletic Commission, in licensing of boxing, kick boxing, wrestling, and sports agents, not authorized to consider moral character or criminal convictions);

Bus. Reg. § 7–308 (Collection Agency Licensing Board not authorized to consider moral character or criminal convictions);

Bus. Reg. § 16–210 and § 16–306 (Comptroller of State, in issuing cigarette business license or license to sell cigarettes at retail not authorized to consider moral character or criminal convictions); and

Bus. Reg. §§ 17–101—17–2106 (miscellaneous business licenses—no authority to consider moral character or criminal convictions).

crimes, however, these boards' inquiries are ordinarily limited to felonies, crimes of moral turpitude, or crimes involving violation of the regulatory requirements relating to the particular occupation or profession. If we were to adopt the HVACR Board's reading of § 9A–310(4) in the case before us, the Board would be empowered to deny an application based upon the intentional violation of any law of this State, felony or misdemeanor, civil or criminal. While the Legislature could have empowered, or in the future may empower, the Board to consider prior criminal convictions, other violations of law, or moral character, unrelated to the subsections in Bus. Reg. § 9A–310, it has thus far chosen not to do so.

We are at a loss to understand the Legislature's rationale behind the distinctions made between the various occupational licenses. We note, however, that they were made intentionally. The Legislature's intent is not a clear beacon leading us to it, but we discern no evidence of intent to authorize the Board to base a decision on the fact of a conviction unrelated to one of the subsections in Bus. Reg. § 9A–310. In fact, it appears that the Legislature, for reasons admittedly not apparent to us, intended not to extend such authorization. The Legislature could have authorized consideration of criminal convictions generally or of general moral character, as it has done in other settings.[10] It did not. In the absence of a legislative scheme that would imply an intent to extend authorization to the Board to base a decision on a conviction unrelated to Bus. Reg. § 9A310, we rely on the statutory language and rules of construction to reach a result. We would be overstepping our bounds and intruding into another branch of government to read into the statute authority that is not there.

An agency's decision is sustainable only on its findings and only for the reasons given. In the case before us, the Board concluded as a matter of law that the fact of appellant's conviction disqualified him from being eligible to obtain a license. The Board, however, also referred to the "circum-

---

**10.** See footnotes 8 and 9, *supra.*

stances of this case" and the "circumstances of conviction." We cannot tell from this record whether there is or may be a legally sufficient basis for the Board's conclusion, and, consequently, we shall remand this case to the Circuit Court for Baltimore City with instructions to remand it to the Board. On remand, the Board may consider any factors contained in Bus. Reg. § 9A–310, or in Bus. Reg. § 9A–302, which set forth the qualifications for applicants.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND IT TO THE HEATING, VENTILATION, AIR–CONDITIONING AND REFRIGERATION BOARD FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.