931 A.2d 537

Allan J. CULVER

v.

MARYLAND INSURANCE COMMISSIONER.

No. 2508, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Sept. 7, 2007.

646

Allan J. Culver, Bel Air, pro se.

Kathleen A. Birrane, J. Van Lear Dorsey, Melinda K. O'Malley, J. Joseph Curran, Jr., Atty. Gen., on brief, for appellee.

Panel SALMON, ADKINS and MEREDITH, JJ.

SALMON, J.

The Maryland Insurance Administration ("MIA") revoked Allan J. Culver's insurance producer's license. Culver sought judicial review before the Circuit Court for Baltimore City, which affirmed the MIA's order of revocation. Three issues are presented by Culver in this appeal:

I. Whether the trial court erred in holding [that] [a]ppellant was not entitled to a "contested hearing" pursuant to [Section 2–210 of the Insurance Article of the Maryland Code].

II. Whether the trial court erred [in] affirming the revocation of [appellant's] license entered in excess of the statutory authority granted to [the MIA].

III. Whether the trial court erred [in] affirming an order of [the MIA] revoking [a]ppellant's license which was unsupported by substantial evidence.

## I. FACTS

Anyone selling insurance in Maryland must be licensed as an insurance producer by the MIA.[1] Culver, while an attorney admitted to practice in Maryland, submitted his application for a license to sell insurance on August 10, 2001. On the application, Culver informed the MIA that he was under investigation by the Attorney Grievance Commission of Maryland ("AGC"). The MIA decided to put Culver's application on hold until the AGC concluded its investigation.

As a result of the AGC's investigation, legal proceedings were brought against Culver; the proceedings were concluded by an opinion by the Maryland Court of Appeals. *See Attorney Grievance Comm'n v. Culver*, 371 Md. 265, 808 A.2d 1251 (2002). The Court held that Culver had violated Maryland Rules of Professional Conduct ("MRPC") 1.5(c), as adopted by Maryland Rules 16–812 (Fees) and 16–607(b)(2) (Commingling of funds), during the course of his representation of a client. *Id.* at 275–76, 808 A.2d 1251. Culver was suspended indefi-

---

1. An "insurance producer" is defined in Section 1–101(u)(1) of the Insurance Article of the Maryland Code (2006) as

> a person that, for compensation, sells, solicits, or negotiates insurance contracts, including contracts for nonprofit health service plans, dental plan organizations, and health maintenance organizations, or the renewal or continuance of these insurance contracts for:
> (i) persons issuing the insurance contracts; or
> (ii) insureds or prospective insureds other than the insurance producer.

nitely from the practice of law but was granted the right to seek reinstatement after thirty days. *Id.* at 284, 808 A.2d 1251. On February 12, 2003, which was about four months after the effective date of his suspension, Culver's license to practice in Maryland was reinstated.

By letter dated March 17, 2003, Culver informed the MIA of the outcome of the disciplinary proceedings and his reinstatement. His letter advised that the AGC was still investigating another matter involving his conduct. On May 2, 2003, the MIA issued Culver an insurance producer's license.

The other matter that the AGC was investigating involved allegations stemming from Culver's representation from 1993 to 1994 of a female client who was seeking a divorce. That investigation led to charges that were ultimately considered by the Court of Appeals. *See Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 849 A.2d 423 (2004). The Court held that Culver had violated MRPC 1.2 (Scope of representation), 1.3 (Diligence), 1.5, 1.7 (Conflict of interest), 1.15 (Safekeeping property), 3.1 (Meritorious claims and contentions), 3.2 (Expediting litigation), 3.3 (Candor toward the tribunal), 3.4 (Fairness to opposing party and counsel), and 8.4 (Misconduct). *Id.* at 259–88, 849 A.2d 423. Among other things, the Court ruled: (1) Culver's sexual intercourse with his client while representing her in a divorce case violated several rules; (2) Culver's advice to his client to obtain credit card loans in order to pay legal fees with the intent of having the debt discharged in bankruptcy was fraudulent conduct; and (3) Culver violated rules governing fees and payments from his client. The Court of Appeals disbarred Culver from the practice of law in Maryland effective May 13, 2004.

On December 9, 2004, the MIA revoked Culver's insurance producer's license. Intending to challenge the revocation, Culver asked for an evidentiary "contested hearing" to be held by the Office of Administrative Hearings ("OAH"). The MIA moved for summary disposition of the matter. The Administrative Law Judge ("ALJ") assigned to the matter refused to issue the subpoena requested by Culver and sent the parties a

letter advising that the "contested hearing" requested was being converted to a "motions hearing."

The motions hearing was held before the ALJ on April 13, 2005.[2] The MIA argued that the decision of the Court of Appeals disbarring Culver indicated that he was untrustworthy and, therefore, did not meet the statutory requirements for a licensed insurance producer. Culver countered by declaring his desire to contest the findings of fact that had already been made by the Court of Appeals. The ALJ agreed with MIA that, in light of the facts as established by the most recent Court of Appeals decision involving appellant's actions, an evidentiary hearing was unnecessary. The ALJ issued a recommendation for summary disposition in favor of the MIA.

The ALJ ruled:

After considering the arguments of the parties, I find that there are no material facts needing to be developed at a hearing on the merits. Although the Respondent [Culver] may dispute the facts the Court of Appeals decided in his disbarment proceeding, I have no authority to retry that case.

The question now becomes whether the MIA is entitled to prevail as a matter of law. I find that the Administration has established that it was justified in revoking the Respondent's license to act as an insurance producer in this State. The extensive findings of the Court of Appeals show that the Respondent committed numerous acts evidencing dishonesty, untrustworthiness and serious breaches of the fiduciary duty owed to his clients. Moreover, the Court found that the Respondent exhibited an unwillingness to accept responsibility for his egregious misconduct. The Court also found that the Respondent showed no remorse and, instead, attempted to minimize the seriousness of his actions.

---

2. The parties noted at the hearing held before the Circuit Court for Baltimore City that there were "problems" involved with the transcription of the motions hearing held on April 13, 2005. Because of those problems, the transcript is not a part of the record.

In conclusion, I find that the undisputed facts are that the Respondent violated the provisions of Section 10–126(a) and (f) of the Insurance Article, Annotated Code of Maryland. . . .

Culver filed exceptions to the recommended order. The MIA held oral arguments on the exceptions and considered legal arguments but did not allow Culver to present evidence. On July 14, 2005, the MIA issued its final order of revocation. Culver filed a petition for judicial review in the Circuit Court for Baltimore City. The circuit court affirmed the MIA's order on December 12.

## II. *THE REVOCATION OF CULVER'S INSURANCE PRODUCER'S LICENSE*

In its final order of revocation, the MIA concluded that Culver violated Sections 10–126(a)(2), 10–126(a)(3), 10–126(a)(13), and 10–126(f) of the Insurance Article of the Maryland Code (2003 Repl.Vol.). Section 10–126 reads, in pertinent part:

(a) *Grounds.*—The Commissioner may deny a license to an applicant under §§ 2–210 through 2–214 of this article, *or suspend, revoke, or refuse to renew or reinstate a license after notice and opportunity for hearing under §§ 2–210 through 2–214 of this article if the applicant or holder of the license:*

(1) has willfully violated this article or another law of the State that relates to insurance;

(2) has intentionally misrepresented or concealed a material fact in the application for a license;

(3) has obtained or attempted to obtain a license by misrepresentation, concealment, or other fraud;

\* \* \*

(13) *has otherwise shown a lack of trustworthiness* or incompetence to act as an insurance producer; . . .

(f) *Report of adverse administrative action.*—*(1) Within 30 days after the final disposition of the matter, an insur-*

*ance producer shall report to the Commissioner any adverse administrative action taken against the insurance producer: ...*

(ii) by another governmental unit in this State.

(Emphasis added.)

Regarding the requirement set forth in 10–126(f) to report an adverse administrative action, the MIA held that "[t]he Respondent's failure to notify the Administration of his disbarment could only be deliberate, and his suggestion that he did not personally notify the Administration because he was aware that his disciplinary action was being monitored by the MIA is itself deceitful." The agency found that "Respondent advised the Administration of a pending matter before the Attorney Grievance Commission in his application letter, albeit cryptically, but did not follow up once the matter was decided against him, disbarring him from the practice of law." The MIA noted that Culver's response to a question on his license application regarding AGC proceedings read as follows:

I deny I have committed any ethical or disciplinary rule violation in any matter currently being investigated. Since these matters are confidential in nature I refer you to the [AGC] for any additional information that may be needed.

The MIA adopted the ALJ's findings and conclusions "[i]nsofar as they are consistent with this Final Order."

The MIA explicitly "reject[ed] Respondent's argument that '[t]he 2004 Court of Appeals opinion does not apply or even attempt to establish any of the findings of fact that are determinative in this insurance revocation proceeding [and that the] Court's opinion is in no way dispositive of the facts or the claims against Culver in this proceeding.' "

### III. *STANDARD OF REVIEW*

In *Maryland Aviation Administration v. Noland,* 386 Md. 556, 571–72, 873 A.2d 1145 (2005), the Court said:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining

if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; the agency's decision is prima facie correct and presumed valid, and it is the agency's province to resolve conflicting evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency. *Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency.* Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

(Citations and quotations omitted) (latter emphasis added).

## IV. *COLLATERAL ESTOPPEL*

### A.

Collateral estoppel, or issue preclusion, bars a party from re-litigating an issue that he or she has already litigated unsuccessfully in another action. Collateral estoppel is of the "nonmutual" variety if one of the parties in the present suit was neither a party nor in privity with a party to the prior action. Nonmutual collateral estoppel may arise in two circumstances:

Offensive use of nonmutual collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully

in another action against a different party. Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party.

*Welsh v. Gerber Prods., Inc.,* 315 Md. 510, 518 n. 6, 555 A.2d 486 (1989).

The Court of Appeals has recognized *defensive* nonmutual collateral estoppel but has "yet to formally embrace *offensive* nonmutual collateral estoppel." *Rourke v. Amchem Prods., Inc.,* 384 Md. 329, 349, 863 A.2d 926 (2004). In *Rourke,* the Court rejected the use of offensive nonmutual issue preclusion where the pertinent issue—the applicability of a contractual arbitration clause—had been previously litigated in Virginia. In *Amchem Products, Inc. v. Newport News Circuit Court Asbestos Cases,* 264 Va. 89, 563 S.E.2d 739 (2002), the Virginia Supreme Court had already ruled on the arbitration clause issue. The Court of Appeals determined that "[w]hether and how far to depart from the traditional requirement of collateral estoppel that there be mutuality of parties has been, and ought to remain, a policy decision for each State to make." 384 Md. at 349, 863 A.2d 926. Applying full faith and credit to the Virginia decision, the Court held that

a Maryland court must treat the judgment precisely the same as it would be treated in a Virginia court, and that requires that we apply the preclusion rules that would be applied in Virginia.... As the parties agree that Virginia continues to require mutuality as part of its collateral estoppel law and would therefore not give preclusive effect to its *Amchem* judgment in a second action by different plaintiffs, and clearly would not, and could not, give preclusive effect to it against defendants who were not parties, or in privity with parties, in the Virginia action, the Circuit Court and the Court of Special Appeals were correct in not giving preclusive effect to it in this action.

*Rourke,* 384 Md. at 351–52, 863 A.2d 926.

Thus, the Court of Appeals holding was based on conflict of laws considerations rather than on the merits of offensive

nonmutual collateral estoppel as a rule of law.[3]  The

Court did include, however, the following comment:

> The Supreme Court, as an aspect of Federal law, has departed from the mutuality requirement, although in *Parklane Hosiery Co., Inc., v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552, it expressed some concerns about, and refrained from blessing the broad application of, offensive non-mutuality.  The Court articulated two reasons posited for why offensive and defensive non-mutuality should not be treated the same.  First, "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does." *Id.* at 329, 99 S.Ct. at 650, 58 L.Ed.2d at 561.  The Court explained that, whereas defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action, if possible, offensive collateral estoppel creates a contrary incentive: "[s]ince a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Id.* at 330, 99 S.Ct. at 651, 58 L.Ed.2d at 561.

---

**3.**  Many other jurisdictions have explicitly allowed or applied offensive nonmutual collateral estoppel. *See, e.g., Briggs v. Newton,* 984 P.2d 1113, 1120 (Alaska 1999); *Johnson v. Union Pacific Railroad,* 352 Ark. 534, 104 S.W.3d 745, 751 (2003); *Roos v. Red,* 130 Cal.App.4th 870, 30 Cal.Rptr.3d 446, 452 (2005); *Modiri v. 1342 Restaurant Group, Inc.,* 904 A.2d 391, 395 (D.C.2006); *Preferred Am. Ins. v. Dulceak,* 302 Ill.App.3d 990, 235 Ill.Dec. 974, 706 N.E.2d 529, 532 (1999); *Exotics Hawai'i–Kona, Inc. v. E.I. Dupont De Nemours & Co.,* 104 Hawai'i 358, 90 P.3d 250, 263 (2004); *Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034, 1038 (Ind.1993); *State Mut. Ins. Co. v. Bragg,* 589 A.2d 35, 37 (Me. 1991) *In re Goldstone,* 445 Mass. 551, 839 N.E.2d 825, 832 (2005); *Helm v. Wismar,* 820 S.W.2d 495, 498 (Mo.1991); *Matter of Capoccia,* 272 A.D.2d 838, 847, 709 N.Y.S.2d 640 (N.Y.App.Div.2000); *Rymer v. Estate of Sorrells by and Through Sorrells,* 127 N.C.App. 266, 488 S.E.2d 838, 840 (1997); *Shaffer v. Smith,* 543 Pa. 526, 673 A.2d 872, 874–75 (1996); *McPherson v. South Carolina Dep't of Highways & Pub. Transp.,* 297 S.C. 303, 376 S.E.2d 780, 781–82 (1989); *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 7 (Tex.1986).

A second argument against offensive non-mutual collateral estoppel is that it may be unfair to the defendant, for several reasons. The Court noted (1) that "[i] f a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable," (2) offensive use may be unfair as well "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant," and (3) such use may be unfair "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 330–31, 99 S.Ct at 651, 58 L.Ed.2d at 562.

*Rourke,* 384 Md. at 349–50, 863 A.2d 926.

The potential detriments foreseen by the *Parklane Hosiery* Court are not present here. The Court's first concern—that the plaintiff would adopt a "wait and see" attitude toward the first action—is not cause for worry because the MIA is not a plaintiff seeking a windfall without any work. Rather, as a regulatory body, the MIA is charged with protecting consumers from untrustworthy insurance producers by revoking or denying their licenses. When the MIA discovered that the highest court of this state had found that Culver acted dishonestly, it refused to allow appellant to relitigate the underlying facts found by that Court. The MIA's actions did not constitute the kind of "wait and see" attitude that troubled the *Parklane Hosiery* court.

The Court's second concern—fairness to the defendant—contemplates three scenarios in which the use of offensive nonmutual collateral estoppel would be unfair to the defendant. None of the scenarios are here present. Appellant had every "incentive to defend vigorously" in the action that resulted in his disbarment. Similarly, the present case is not one where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." Nor is this a case in which procedural protections afforded in the later case may lead to a result inconsistent with the prior action. In sum, application

of collateral estoppel principles to the case *sub judice* would satisfy all of the concerns identified in *Parklane Hosiery* and reiterated in *Rourke.*

### B.

■ Whether offensive or defensive, an application of non-mutual collateral estoppel must pass a four-part test:

"1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"

*Leeds Fed. Sav. & Loan Ass'n v. Metcalf,* 332 Md. 107, 118, 630 A.2d 245 (1993) (quoting *Washington Suburban Sanitary Com'n v. TKU Assocs.,* 281 Md. 1, 18–19, 376 A.2d 505 (1977)).

Here, prongs two, three, and four were clearly met. The action resulting in appellant's disbarment was certainly a final judgment on the merits; appellant was a party to that action; and appellant was provided a fair opportunity to be heard by the Court of Appeals.

■ As to the first of the four prongs, we hold that several issues decided in the disbarment action are identical to the issues presented in the proceedings before the MIA. As previously noted, the Court of Appeals found that appellant had, *inter alia,* acted in a manner prejudicial to the administration of justice, exploited and coerced his client into acceding to his sexual demands, advised his client to commit fraud, acted dishonestly when giving financial advice, and mishandled funds. These were the same findings that appellant sought to relitigate before the MIA.

There is no indication in the administrative record that appellant sought to introduce any evidence that could aid his cause that would not have challenged the findings that the Court of Appeals had already made. The MIA's order was

based not on one specific finding that appellant was "dishonest," but rather on the ALJ's conclusion that appellant had "engaged in a pattern of conduct involving dishonesty, fraud, deceit and misrepresentation … demonstrating that he does not meet" the standard of trustworthiness. The ALJ properly applied the offensive use of nonmaterial collateral estoppel in this case. Therefore, appellant was properly barred from relitigating matters already decided by the Court of Appeals.

Appellant cites *Powell v. Maryland Aviation Administration*, 336 Md. 210, 647 A.2d 437 (1994), for the principle that "the ALJ is required to make independent findings of fact," regardless of the prior decision of the Court of Appeals. The *Powell* case involved a state employee's administrative disciplinary hearing at which Powell, an employee of the Maryland Aviation Administration, was charged with misconduct. At a bench trial in the Circuit Court for Harford County, Powell had been found guilty of telephone misuse because he had (allegedly) left harassing messages on a woman's answering machine. *Id.* at 213, 647 A.2d 437. Instead of convicting Powell, however, the circuit court granted him probation before judgment. *Id.* at 214, 647 A.2d 437. At Powell's ensuing disciplinary hearing, the ALJ and the Maryland Aviation Administration gave weight to the finding of guilt despite the lack of a judgment. *Id.* at 215–16, 647 A.2d 437. On appeal, the Court of Appeals held that, "[b]ecause there is no judgment, the principle called nonmutual collateral estoppel or issue preclusion does not apply to bar relitigating the facts underlying the finding." *Id.* at 218, 647 A.2d 437. *Powell* simply stands for the principle that collateral estoppel may not be invoked without a prior judgment. Here, there was a prior judgment. *Powell* does not stand for the proposition, as appellant seems to suggest, that collateral estoppel may not be the basis for an administrative decision.

## V.  OTHER CONTENTIONS

### A.

■ Appellant challenges the use of summary decision to dispose of his case. Citing Section 2–210 of the Insurance

Article of the Maryland Code, appellant contends that Maryland law guarantees a hearing to an insurance provider before his or her license may be revoked. He argues that the Administrative Procedure Act guarantees him the right to present evidence at this hearing. *See* Md.Code, State Gov't § 10–213(a)(1) (2004 Repl.Vol.) ("Each party in a contested case shall offer all of the evidence that the party wishes to have made part of the record."). This argument has no merit. A summary decision, such as the one in this case, is authorized by COMAR 28.02.01.16.D. The evidence that appellant desired to put forth would have constituted nothing more than an attempt to relitigate the findings made in the disbarment actions. As stated above, principles of collateral estoppel barred appellant from relitigating those issues. Because appellant could not challenge the findings made in the disbarment actions, there were no material facts at issue. Therefore, his case was disposed of appropriately by summary decision.

### B.

■ Appellant argues that the MIA exceeded its statutory authority by revoking his license on the basis of "attorney misconduct or the sanction of disbarment." In support of this claim, he refers us to our decision in *Linkus v. Maryland State Board of HVACR Contractors*, 114 Md.App. 262, 689 A.2d 1254 (1997). In *Linkus*, the HVACR Board denied Linkus a Master Contractor's License because of his prior conviction for rape. *Id.* at 268, 689 A.2d 1254. Linkus argued successfully on appeal that the Board lacked the authority to deny a license on the grounds of a prior conviction. We said:

> The statutory provision applicable to denial of a license appears in [Section 9A–310 of the Business Regulation Article of the Maryland Code], which states that:

> The Board may deny a license to any applicant, reprimand any licensee, or suspend or revoke a license after a public hearing conducted in accordance with the provisions of 9A–311 of this title, if the Board finds that the individual:

    (1) obtained a license by false or fraudulent representation;

    (2) transferred the authority granted by the license to another person;

    (3) willfully or deliberately disregarded and violated the code established by the Board under this title;

    (4) willfully or deliberately disregarded and violated building codes, electrical codes, or laws of the State or of any municipality, city, or county of the State;

    (5) aided or abetted a person to evade a provision of this title by allowing a license to be used by an unlicensed person, firm, or corporation;

    (6) willfully or deliberately disregarding disciplinary action taken by a municipality, city, or county against the individual in connection with providing heating, ventilation, air-conditioning, or refrigeration services;

    (7) abandoned or failed to perform, without justification, any contract or project to provide heating, ventilation, air-conditioning, or refrigeration services;

    (8) performed work under a heating, ventilation, air-conditioning, or refrigeration services contract or project that is inadequate or incomplete;

    (9) directly or indirectly published any advertisement relating to the providing of heating, ventilation, air-conditioning, or refrigeration services that contained an insertion, representation, or statement of that is false, deceptive, or misleading;

    (10) made any material misrepresentation in the procurement of a heating, ventilation, air-conditioning, or refrigeration services contract or project;  or

    (11) failed in any material respect to comply with the provisions of this title.

We held in *Linkus* that this list of misdeeds did not provide authority for the HVACR Board to deny Linkus a license based on a criminal conviction.

Nothing said in *Linkus* advances appellant's argument. The MIA is authorized to revoke an insurance producer's license for "a lack of trustworthiness ... to act as an insurance provider." Md.Code, Ins. § 10–126(a)(13) (2003 Repl. Vol.). Mindful of the deference to be paid to the agency's interpretation of the statutes it administers, we hold that the MIA had the authority to revoke appellant's license for—in the words of the ALJ—the "pattern of conduct involving dishonesty, fraud, deceit and misrepresentation that led to his disbarment, demonstrating that he does not meet this standard [of trustworthiness]."

Appellant argues that "the power to discipline a licensee is limited to *willful* or *intentional* violations of ... § 10–126 or another law of the state that *relates to insurance*." This reading ignores the plain language of the statute. The adverb "willfully" applies only to Section 10–126(a)(1) and not to the remainder of the section. Moreover, it would be nonsensical to require a showing of a "willful" lack of competence as a basis for revocation. It is also clear from a reading of the statute (quoted *supra* at page 5) that the requirement that the producer's misconduct be "relate[d] to insurance" does not apply to § 10–126(a)(13).

Nor do we find any merit in appellant's argument that the MIA's revocation is unsupported by substantial evidence. As already shown in our collateral estoppel analysis, the MIA's order was well-supported by the Court of Appeals' 2004 disbarment opinion.

## C.

██ Appellant argues that the MIA erred in finding that he violated Section 10–126(f) of the Insurance Article, because neither the Court of Appeals nor the AGC are "governmental units" within the meaning of the statute. As mentioned *supra*, Section 10–126 requires an insurance producer to report any adverse administrative action by another *governmental unit* to the commissioner within thirty days of the adverse action. *See* Section 10–126(f)(ii). Section 10–101(a) of the

Governmental Procedures Article of the Maryland Code defines the word "Unit," as used *"in this subtitle,"* as "an officer or unit authorized by law to adopt regulations." Section 10–102(b) of that article reads, in pertinent part: "Exclusions.— *This subtitle* does not apply to: ... a unit in the Judicial Branch of the State government...." (Emphasis added.) Both of the quoted sections apply solely to Subtitle 1 of Title 10 of the State Government Article of the Maryland Code. They do *not* apply to the Insurance Article, and therefore those sections do not define "governmental unit" for the purpose of the Insurance Article. We therefore agree with the MIA's conclusion that appellant violated Section 10–126(b)(ii) by waiting more than thirty days to notify the Commissioner of Insurance that the Court of Appeals ("another governmental unit") had taken adverse action against him.

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**