963 A.2d 271

**James McKinley HAYES**

v.

**STATE of Maryland.**

**No. 2436, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Jan. 6, 2009.

Lorenzo Randle, Riverdale, for appellant.

David E. Beller and Julia D. Bernhardt (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: ZARNOCH, WRIGHT, JAMES A. KENNEY, III, (Retired, specially assigned), JJ.

**WRIGHT, J.**

This appeal arises from the Circuit Court for Prince George's County's dismissal of a negligence complaint filed by James McKinley Hayes ("Hayes"). Hayes was accused by his ex-wife of abusing their minor daughter, and the Department of Social Services ("DSS") found that he was an "indicated child abuser." Hayes appealed this finding to an Administrative Law Judge ("ALJ"), who overturned it. Hayes then brought a negligence action against DSS based on its failure to conduct the "thorough investigation" required by Md. Code (1984, 2006 Repl. Vol.), § 5–706(a) of the Family Law Article ("FL"). The circuit court held that this statute does not create a legally cognizable duty to the target of the investigation and dismissed the case for failure to state a claim on which relief could be granted.

## Questions Presented

The appellant, on appeal, presents several issues, which we have consolidated and rephrased for clarity: [1]

---

**1.** Appellant's issues were as follows:

I. Whether or not the lower court erred in ruling that appellant's amended complaint failed to sufficiently allege facts establishing that the State of Maryland owed a duty to appellant Hayes, who at the time was an accused child abuser, to conduct a thorough investigation of allegations of suspected child abuse before labeling the alleged abuser, in this case appellant Hayes, an "indicated child abuser," in order to protect both the welfare of the child and to conserve and protect the child's family ties and the family unit as a whole.

II. Whether or not the lower court erred in impliedly ruling that appellant's amended complaint did not and could not allege a statutorily prescribed legal duty of the State of Maryland owed to appellant, who at the time was an accused child abuser, to conduct a thorough investigation of allegations of suspected child abuse before labeling the alleged abuser, in this case appellant Hayes, an "indicated child abuser," in order to protect both the welfare of the child and to conserve and protect the child's family ties and the family unit as a whole.

III. Whether or not the lower court erred by not giving collateral estoppel and issue preclusive effect to the prior ruling issued by the Circuit Court for Prince George's County, Honorable Sean D. Wallace,

1. Whether the lower court erred in determining that the State's duty to investigate allegations of child abuse is a duty that is owed to children and not to the target of abuse investigation.

2. Whether the lower court erred in dismissing the appellant's amended complaint without giving preclusive effect to the judgment in a domestic relations case between Hayes and his former spouse.

■ The Court of Appeals has recognized a limited statutory duty on the part of DSS to investigate reports of child abuse. However, that duty runs to the children who are the subject of the reports and not to their parents. *See Horridge v. St. Mary's County Dep't of Soc. Servs.,* 382 Md. 170, 854 A.2d 1232 (2004). Under the circumstances of this case, we hold that DSS did not owe a comparable legal duty to Hayes and, therefore, we affirm the judgment of the circuit court. We note, however, that Hayes does not allege intentional or malicious conduct on the part of any DSS employee, nor is this a case where DSS failed to conduct any investigation whatsoever.

## Facts and Procedural History

Hayes and Sherry Hayes ("Sherry") were married on September 15, 2004, and Ciara was born to the couple on May 16, 1995. At the time of Ciara's birth, Hayes was aware that he was probably not her biological father, and subsequent DNA testing confirmed that he, in fact, is not. Nevertheless, the parties agreed that they would raise Ciara as if she were Hayes's daughter. The record does not indicate that Ciara's biological father has ever been involved in her life. Mr. and

Judge, on June 22, 2004, in *Hayes v. Hayes,* CAD–01–17083, which ruling judicially determined, pursuant to FL § 9–101, that no incident of child abuse by appellant Hayes took place, and which ruling should have rendered moot and resulted in an immediate closure and cessation of the investigation by the Prince George's County DSS which resulted in the ultimately discredited and reversed finding of "indicated child abuse" against appellant Hayes.

Mrs. Hayes separated on March 24, 1997, with Sherry taking custody of Ciara and Hayes receiving visitation.

On May 20, 2002, the Circuit Court for Prince George's County granted the couple an absolute divorce. The parties entered into a consent agreement that granted sole legal and physical custody of Ciara to Sherry and gave Hayes daytime visitation on Saturday and on Thursday after school. The court reserved on the issue of overnight visitation pending an evaluation by the child psychologist. On April 25, 2003, the circuit court granted Hayes overnight visitation every other weekend. The court acknowledged the constitutional presumption that a child's best interest is best served by remaining in the custody of the biological parent. The court, nevertheless, held that the presumption was overcome because Sherry had exhibited a pattern of denying Hayes visitation and undermining Ciara's relationship with him—the only father she had ever known. In fact, Sherry had been held in contempt for failure to abide by the court's visitation orders.

On May 22, 2004, while Ciara was visiting with Hayes, he took her to a Giant Food store in Largo, Maryland. They went to a self-checkout line and Ciara asked the Giant employee supervising the area for assistance in ringing up some cookies. The next day, Sunday, Ciara and Hayes attended a church graduation ceremony and afterwards, at 6:00 p.m., Hayes returned Ciara to Sherry. According to Sherry, Ciara complained that the middle finger of her right hand hurt and that Hayes had bent her finger back while they were checking out at Giant. Sherry took Ciara to Kaiser Permanente, where she was diagnosed with a finger sprain and treated with ice and a finger splint.

As a result of this incident, Sherry filed a motion for an emergency hearing on May 28, 2004. She also contacted the circuit court on June 1, 2004, asking the court to stay Hayes's next visit, scheduled for June 4, 2004. The court declined to do so, choosing instead to address the issue at a previously-scheduled review hearing on June 7, 2004. Six hours after the

emergency hearing, Sherry initiated criminal charges against Hayes.

At the review hearing on June 7, 2004, the circuit court heard testimony from Ciara and Sherry about the alleged finger-bending incident. Hayes testified on his own behalf and also presented the testimony of a Mr. Gilmore, who observed Ciara at the church event and did not see any injury. There was also testimony from the Giant employee, who did not know any of the parties, stating that she observed Hayes and Ciara checking out and did not see the alleged finger-bending incident, Ciara was not crying, and the interaction between Hayes and Ciara was normal and pleasant. The court made a factual finding that "there was no incident and there was no injury to Ciara."

Sherry appealed to this Court, *pro se,* arguing that this finding was clearly erroneous and challenging the circuit court's decision to continue visitation even though DSS's investigation and the criminal case were not yet concluded. In an unpublished opinion issued July 13, 2005, *Sherry F. Hayes v. James M. Hayes,* No. 1051, Sept. Term, 2004, 163 Md.App. 710, we held that the circuit court's findings were supported by the record and that, "[b]ased upon the court's decision relating to the finger sprain, the Protective Services investigation was moot." *Id.,* slip op. at 7. As a result, we affirmed the circuit court's decision. Our opinion included a section that addressed Sherry's "unwarranted" attacks on the circuit court judge, accusing the judge of bias. *Id.,* slip op. at 8. We noted: "The record supports the court's conclusion that appellant herein has continued her effort to destroy any meaningful relationship between her daughter and her former husband since the divorce in 2002 ... [and that this] is adversely affecting the child." *Id.* Sherry's behavior had continued after she filed her appeal—she was held in contempt on December 21, 2004, for failing to facilitate visitation.

Meanwhile, in July 2004, the State's Attorney's Office for Prince George's County told Hayes that it planned to pursue the assault charge because DSS was planning to classify

Hayes as an "Indicated Child Abuser." DSS sent Hayes a letter dated August 30, 2004, informing him that it had made a finding of indicated child abuse against him. Hayes was tried in district court on October 26, 2004, and he was found not guilty. As was his right, he appealed DSS's finding of indicated child abuse.[2] On May 16, 2005, after a contested hearing, the ALJ ruled that: Sherry and Ciara had "likely fabricated" the incident; a finding of indicated child abuse was not supported by the record, nor was a finding of unsubstantiated child abuse supported; and, the finding of indicated child abuse must be vacated and replaced with a finding of "child abuse ruled out." Neither party appealed the ALJ's decision.

On May 22, 2007, Hayes filed a ten-count negligence complaint in the Circuit Court for Prince George's County against the State of Maryland. The State filed a motion to dismiss, contending that the complaint failed to state a claim on which relief could be granted, because DSS did not owe a legally cognizable duty to Hayes to conduct its investigation in a particular manner. In the motion, the State noted that the statute requiring DSS to conduct a "thorough investigation" left DSS the discretion to conduct the investigation as it saw fit. In addition, the statute creates a duty to the public, generally, not accused perpetrators of child abuse, specifically. The motion also argued that, even if Hayes was owed a duty, the chain of causation necessary to hold the State liable was broken by Sherry's deliberate actions. Finally, the Assistant State's Attorney and District Court Commissioner enjoy absolute immunity; therefore, the State could not be held liable for their actions.

On August 27, 2007, Hayes filed an amended complaint naming Alice Gregory, a social worker at DSS; Deneen Gaskin, a supervisory social worker at DSS; David Stewart, Child Protective Services; Carol Ann Smith, Attorney General's

---

2. "In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Governmental Article...." FL § 5–706.1(b).

Office; Raymond Garvey, Maryland State Treasurer; Phil Newsom, DSS; Shannon Crawford, District Court Commissioner; and Lisa Hall, Assistant Attorney General, as defendants. Count I alleged that Gregory and Gaskin were negligent because they did not contact the witnesses Hayes named, obtain Ciara's medical records, or "recognize the collateral estoppel/issue preclusive effect of the prior judicial decision" of the circuit court that the incident never occurred. Count II alleged that Gregory and Gaskin were negligent in failing to re-evaluate the evidence and change the finding from "indicated" to "ruled-out" child abuse prior to the ALJ's decision. Counts III–VI and Count XI contended that Stewart, Smith, Burke, Garvey, and Newsom, as well as additional unnamed agents of DSS, failed to properly expunge records relating to the finding of indicated child abuse against Hayes, in violation of the ALJ's order. Hayes alleged that these actions were negligent and violated his right to privacy and due process. Counts VII–IX contended that the District Court Commissioner negligently failed to ensure that probable cause existed before she issued a warrant for Hayes's arrest. Finally, Count X contended that the Assistant State's Attorney negligently failed to investigate before proceeding to trial on the assault charge. Listed among the injuries caused by the defendants' negligence was "invasion of privacy under the First, Fourth and Fifth Amendments of the U.S. Constitution."

The State filed a second motion to dismiss and the circuit court held a hearing on the motion on November 2, 2007. The motion was granted on November 27, 2007, with the circuit court finding that "the Amended Complaint failed to sufficiently allege facts: 1) establishing a duty owed to Plaintiff upon which tort liability can be based, the breach of which proximately caused injury; 2) supporting a cause of action for invasion of privacy; 3) supporting a cause of action for violation of due process; 4) abrogating the Commissioner's judicial immunity or the Assistant State's Attorney's qualified immunity." Hayes filed a timely appeal to this Court.

## Discussion

At the outset, we note that Hayes is suing the State of Maryland pursuant to the Maryland Tort Claims Act ("MTCA"). *See* Md. Code (1984, 2004 Repl. Vol.), State Government Article ("SG"), § 12–104(a) & § 12–110. As we explained in *Pulliam v. Motor Vehicle Administration,* 181 Md.App. 144, 955 A.2d 843 (2008), "[h]istorically, the State of Maryland enjoyed immunity from tort liability for the acts of its employees but, by the enactment of the Maryland Tort Claims Act, Md.Code Ann., State Gov't § 12–101 *et seq.,* the State, through a limited waiver of sovereign or governmental immunity, provides a remedy for citizens injured by the *negligent* acts or omissions of state personnel acting within the scope of their public duties." *Id.* at 154 n. 2, 955 A.2d 843 (emphasis added). The State is not liable when the acts of its employees are malicious or grossly negligent—but no one is contending that such is the case here. *See* CJP § 5–522(a)(4)(ii).

Although Hayes's initial complaint contained multiple defendants and counts, he has abandoned many of those claims on appeal. In his brief to this Court, he discusses the allegations found in Counts III–XI of his complaint and concedes that "[t]hese allegations are not material to this appeal and are not being pursued in this appeal." As a result, we need only address Counts I and II, which contend that Gregory and Gaskin negligently failed to conduct a "thorough investigation" of the allegation against Hayes. "In the context of a negligence action, we have previously held that a sufficient pleading must 'allege, with certainty and definiteness, facts and circumstances sufficient to set forth (a) a *duty* owed by the defendant to the plaintiff, (b) a *breach* of that duty and (c) injury *proximately* resulting from that breach.'" *Scott v. Jenkins,* 345 Md. 21, 28, 690 A.2d 1000 (1997) (quoting *Read Drug and Chem. Co. v. Colwill Constr. Co.,* 250 Md. 406, 412, 243 A.2d 548 (1968)) (emphasis added by *Jenkins* ). "Whether there is adequate proof of the required elements to succeed in a negligence action is generally a question of fact to be

determined by the fact-finder, while the existence of a legal duty is a question of law to be decided by the court." *Pulliam, supra,* 181 Md.App. at 154, 955 A.2d 843. The circuit court in this case granted defendants' motion to dismiss, holding that "the Amended Complaint failed to sufficiently allege facts ... establishing a duty owed to Plaintiff upon which *tort liability* can be based." The court did express sympathy toward Hayes, however, because he "suffered a dreadful experience in the wake of his former spouse's allegations."

"We review the grant of a motion to dismiss *de novo*. We examine the complaint and determine whether it states a legally sufficient cause of action[, and] [d]ismissal is proper only if the complaint would fail to provide the plaintiff with a judicial remedy." *Id.* at 153, 955 A.2d 843. At this stage in the proceedings, we must assume the truth of all well-pleaded, relevant, and material facts in the complaint and any reasonable inferences that can be drawn therefrom. *See Allied Inv. Corp. v. Jasen,* 354 Md. 547, 555, 731 A.2d 957 (1999).

In a negligence action, duty can be established by either common law or statute. *See Gourdine v. Crews,* 405 Md. 722, 755, 955 A.2d 769 (2008). In order for a statute to supply the duty, plaintiff must be "a member of the class of persons the statute was designed to protect and [suffer an] injury [ ] of the type the statute was designed to prevent." *Id.* Hayes relies on FL § 5–706 to supply the duty in this case. It requires, in part:

(a) *In general.*—Promptly after receiving a report of suspected abuse or neglect of a child who lives in this State that is alleged to have occurred in this State:

(1) the local department or the appropriate law enforcement agency, or both, if jointly agreed on, shall make a *thorough investigation* of a report of suspected abuse to protect the health, safety, and welfare of the child or children; or

(2) the local department shall make a *thorough investigation* of a report of suspected neglect to protect the health, safety, and welfare of the child or children.

(Emphasis added).

The Court of Appeals recently discussed the purpose of this statute in *Horridge v. St. Mary's County Department of Social Services*, 382 Md. 170, 854 A.2d 1232 (2004). The Court held that FL § 5–706 "created a duty flowing to children specifically identified to DSS as being the subject of suspected abuse." *Horridge, supra*, 382 Md. at 187, 854 A.2d 1232. The Court reasoned:

The duty to act is mandatory; the steps to be taken are clearly delineated; and, most important, the statute makes clear in several places that *the sole and specific objective* of the requirement is the protection of a specific class of children—those identified in or identifiable from specific reports made to DSS and those also found in the home or in the care or custody of the alleged abuser. This is not an obligation that runs to everyone in general and no one in particular. It runs to an identified or identifiable child or discrete group of children.

*Id.* at 189–90, 854 A.2d 1232 (emphasis added); *see also* FL § 5–702 ("The purpose of this subtitle is to protect children who have been the subject of abuse or neglect"). This language implies that the duty created by FL § 5–706 runs only to the children, and not to the accused parents.

In *Pendleton v. State*, 398 Md. 447, 921 A.2d 196 (2007), the Court of Appeals discussed the factors the court must consider in determining whether defendant owes a duty to plaintiff:

We have held that duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. Whether a duty exists depends upon whether one party is entitled to the protection of, or is under an obligation to, the other party. Thus, this Court stated in *Rosenblatt v. Exxon Co.*, 335 Md. 58, 77, 642 A.2d 180, 189 (1994), that "ultimately, the determination of whether a duty should be imposed is made by weighing

the various policy considerations and reaching a conclusion that the plaintiff's interests are, or are not, entitled to legal protection against the conduct of the defendant." The balancing of policy considerations to determine whether a duty exists involves consideration of a number of factors: the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

\* \* \*

In determining whether a duty exists, it is important to consider the policy reasons supporting a cause of action in negligence. The purpose is to discourage or encourage specific types of behavior by one party to the benefit of another party.

*Id.* at 461–62, 921 A.2d 196 (citations and quotation marks omitted).

We do not believe that the balance of policy considerations present here warrants creation of a remedy for Hayes and would not further the protection of children from abuse or neglect. Although we certainly sympathize with his predicament, we also fear that, were we to grant a remedy to Hayes, there would be no meaningful way to distinguish his case from the myriad of frivolous lawsuits that would surely be filed by parents unhappy with DSS's decisions.

We can also analyze this case under the broader rubric of whether we should create a cause of action based on the statute. In order to make that determination, we use the flexible and applied test suggested by the Supreme Court in

*Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975): [3]

In determining whether a private damage remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a[ ] right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Cort, supra*, 422 U.S. at 78, 95 S.Ct. 2080 (internal citations and quotation marks omitted). As the *Horridge* Court noted, "[t]he legislative policy of preventing future harm to children already reported to have been abused is so abundantly clear as to be beyond cavil." *Horridge, supra*, 382 Md. at 193, 854 A.2d 1232. We find no indication of a countervailing policy of protecting parents from mere accusations of abuse. Plaintiff has failed to cite any legislative history indicating that the General Assembly intended to create a private right of action for parents injured by DSS investigations. Although "permitting recovery by the plaintiff[ ] would not be inconsistent with the underlying purpose of the legislative scheme," because it would help ensure that DSS does not harm children by removing them from the care of their natural parents where there was no abuse, "we do not believe such a broad extension of existing law is necessary to properly implement the legislation." *Chops, supra*, 322 Md. at 91, 585 A.2d 232.

We note that in *Horridge* two judges vigorously dissented from the majority's decision to create a new remedy, saying: "Today, for the first time, the majority imposes tort liability

---

**3.** The Court of Appeals acknowledged that the Supreme Court, in "more recent decisions ... [has] indicated that implication of a private right of action 'is limited solely to determining whether Congress intended to create the private right of action,'" but nevertheless chose to continue using the broader *Cort* test when deciding whether to "change the common law" of Maryland. *Erie Ins. Co. v. Chops*, 322 Md. 79, 90–91, 585 A.2d 232 (1991) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

against governmental entities arising out of discretionary governmental decisions where the state actor has not acted affirmatively to place the alleged victim in danger." *Id.* at 217, 854 A.2d 1232 (Cathell, J., dissenting). The dissenters worried that "the Department [would be forced] to initiate a new inspection [ ] every time there is another allegation" by an "estranged spouse" against the custodial spouse, and that the decision might encourage DSS to remove children unnecessarily. Ironically, this may have happened in Hayes's case, as DSS may have been overly aggressive in its response to a fabricated allegation made by a parent involved in an ongoing custody dispute.

Yet, the dissent may have foreseen the repercussions of *Horridge.* In this case, there was an investigation; DSS social workers contacted Hayes and listened to his side of the story. We do not accept that this was adequate. Clearly, after being informed by Hayes that there was a disinterested witness, the social workers should have followed up. Had they done so, they may well have changed their finding and ruled out abuse after speaking to the Giant employee. Nonetheless, DSS is not obligated to follow the parents' orders, and what constitutes a "through investigation" is subject to the agency's discretion. In *Horridge,* the statute *required* DSS to do four specific things within 24 hours of the initial report of suspected abuse. Horridge's complaint alleged that DSS failed to respond to one of his complaints and failed to respond to the report of a neighbor. The Court of Appeals in *Horridge* held that a complete failure to respond was not within the agency's discretion. But, we do believe that the *breadth* of the investigation is discretionary and, therefore, is not actionable.

■ For all of these reasons, we hold that the circuit court was correct in finding that FL § 5–706 does not create a legally cognizable duty to a parent accused of abuse. We do not, however, mean to imply that the parent has no protections. Hayes himself mounted a successful administrative challenge and the finding of indicated child abuse was re-

versed. In addition, parents are clearly entitled to due process when action is taken to remove their children. *See, e.g., In re Adoption/Guardianship No. 10941,* 335 Md. 99, 112, 642 A.2d 201 (1994) ("[T]he right of a parent to raise his or her child, . . . recognized by constitutional principles, common law, and statute, is so fundamental that it may not be taken away unless clearly justified."). A parent also has some recourse when a vindictive ex-spouse lodges false abuse allegations against him or her. In this case, Hayes could have sued his ex-wife for malicious prosecution for initiating fabricated criminal charges.

Turning now to Count II, Hayes contends that DSS breached its duty "when it decided not to vacate the hearing and reverse its findings based on the negligent investigation" "prior to the hearing" before the ALJ. This is, in part, a reprise of the allegation in Count I that the investigation was negligent, which we have already held is not actionable. In addition, the entire purpose of the contested hearing was to permit Hayes to challenge DSS's finding, and he was successful in his appeal. Hayes cites no case where a government agency's decision to defend an appeal was the basis for a negligence claim against it. We hold that the circuit court properly dismissed Count II.

 Hayes's final argument is that DSS was negligent because it failed to cease its investigation after the circuit court found that the alleged incident was fabricated. Hayes contends that this ruling should have been given collateral estoppel effect. "Collateral estoppel means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit.'" *State v. Long,* 405 Md. 527, 539, 954 A.2d 1083 (2008) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)) (emphasis added). The flaw in Hayes's argument is that the circuit court's ruling was the result of its June 7, 2004, review hearing in Mr. and Mrs. Hayes's divorce and custody case. The parties to that case were Mr. and Mrs. Hayes. DSS was

not a party. Collateral estoppel therefore does not apply. Although we have recognized non-mutual collateral estoppel under some circumstances, the party against whom it is invoked must have been a party to the prior proceeding. *See Culver v. Md. Ins. Comm'r,* 175 Md.App. 645, 654, 931 A.2d 537 (2007).[4] Again, DSS was not a party to the Hayes' custody case.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEE.**

---

**4.** In addition, with respect to the non-mutual collateral estoppel issue, the Supreme Court has refused to allow its assertion against the federal government. *See U.S. v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). We reserve this issue for the appropriate case.