REPORTED

IN THE COURT OF SPECIAL
APPEALS

OF MARYLAND

No. 2158

September Term, 2015

_____

ELIZABETH HARING COOMES

v.

MARYLAND INSURANCE
ADMINISTRATION

_____

Berger,
Reed,
Salmon, James P.
(Senior Judge, Specially Assigned,
JJ.)
_____

Opinion by Berger, J.

_____

Filed: March 30, 2017

*Judge Kevin F. Arthur did not participate
in the Court's decision to report this
opinion pursuant to Rule 8-605.I.

This appeal arises from several decisions of the Maryland Insurance Commissioner ("Commissioner"), including the Commissioner's decision to: (1) grant summary disposition in favor of the Maryland Insurance Administration ("MIA") against Elizabeth Coomes ("Coomes"); (2) affirm the MIA's Amended Order revoking Coomes's producer's license for violations of various provisions of the Insurance Article; and (3) assess an administrative penalty of $1,250.00. The relevant facts in this case surround Coomes's "voluntary surrender" of her Virginia producer's license and whether this "surrender" constitutes an "adverse action" requiring Coomes to report the surrender to the MIA.

On appeal, Coomes presents five issues for our review,[1] which we rephrase as follows:

---

[1] Coomes presented the issues as follows:

1. Did the Hearing Officer commit reversible error when she failed to rule upon Appellant's objections to jurisdiction and exercised jurisdiction over the Virginia matter?

2. Did the Hearing Officer violate petitioner's procedural rights and thus commit reversible error when she granted the Agency's Motion for Summary Disposition and summarily affirmed the Agency's Amended Order summarily revoking Petitioner's Maryland producer license, finding that Petitioner had committed fraud or other dishonest conduct, where the Commissioner made that finding without the benefit of an evidentiary hearing to determine whether Petitioner had the requisite intent to commit the fraud or dishonest conduct alleged by the Administration?

1. Whether the Commissioner erred as a matter of law by finding that Coomes's voluntary surrender of her Virginia insurance producer's license was an "adverse administrative action" requiring her to report it to the Maryland Insurance Administration.

2. Whether there is substantial evidence in the record to support the Commissioner's conclusion as a matter of law that Coomes violated Md. Code (2002, 2011 Repl. Vol.), § 10-126(a)(1), (6), (12), (13), and (f) of the Insurance Article ("I.A.").

3. Whether Double Jeopardy applies to shield Coomes from having her Maryland producer's license revoked after previously voluntarily surrendering her Virginia producer's license based on the same underlying set of facts.

4. Whether the circuit court abused its discretion under Md. Code (1984, 2014 Repl. Vol., 2016 Supp.), § 10-222(f)(2) of the State Government Article ("S.G.") when it denied

---

3. Did the Hearing Officer commit reversible error when she found in a case of first impression, without citation of authority, that Petitioner's voluntary surrender of her Virginia producer's license was an "adverse administrative action," despite the fact that the voluntary surrender was not the result of any formal or informal, final Virginia administrative agency proceeding that included fact finding or resolution of disputed facts, administrative charges, any action, admissions of guilt, findings of fact, conclusions of law or Order?

4. Did the Hearing Officer commit reversible error when she declined to apply the law of Double Jeopardy, the doctrine of Merger or the Rule of Lenity to the Administrative Proceeding?

5. Did the Circuit Court err when it denied the Appellant's Motion for Leave to Offer Additional Evidence?

3

Coomes's motion to offer additional evidence on the basis that the evidence was not material.

## BACKGROUND

In 2004, Elizabeth Coomes became a licensed insurance producer in the Commonwealth of Virginia. That same year, the State of Maryland issued a producer's license to Coomes as a nonresident producer. In September of 2011, the Virginia Department of Insurance ("VDI") began investigating Coomes for alleged acts of misappropriating two checks sent to her in error by Anthem Blue Cross and Blue Shield of Virginia ("Anthem").

Prior to September 2011, Anthem mistakenly sent two checks totaling approximately $20,000 to Coomes's agency's home office in Leesburg, Virginia. Both checks were made out to "EBCA" (Employee Benefit Corporation of America). Coomes, or a member of her staff, deposited the checks into her agency's operating account. EBCA and Anthem notified Coomes that the checks were sent to her agency in error on or around August 18, 2011, and they requested the return of the money since the checks were deposited.

Coomes testified at the hearing before the Commissioner that the agency routinely received commission checks from Anthem and other insurers, and that by the time Anthem demanded repayment for the checks sent in error, she had already spent the money on various business expenses. She further testified that after she informed Anthem that she was not able to repay the money in one lump sum, Anthem refused to take the money out of her future commission payments. Thereafter, she and Anthem came to an agreement for

4

Coomes to repay Anthem immediately with approximately $6,000 to $10,000 cash on hand, and the remainder with a small personal loan. A few days later, however, Anthem filed a complaint with VDI and Coomes did not repay the money immediately.

The VDI began investigating Coomes's conduct in September of 2011 based on allegations that Coomes had misappropriated money through acts of fraud, deception, or dishonesty. The investigation by the VDI addressed Anthem's accusations that Coomes had committed fraud, conversion and had forged endorsements on the checks. Thereafter, Coomes repaid all but $2,000 of the money owed with a series of three checks sent in February and March of 2012. Coomes, however, refused to repay the remaining $2,000, averring that Anthem owed her the money for unrelated advertising co-op costs under her contract with Anthem.

The VDI's investigation ultimately was resolved without a hearing when Coomes agreed to a "voluntary surrender" of her Virginia producer's license. Coomes executed the voluntary surrender agreement with the VDI on or around December 10, 2012, to be effective March 11, 2013.[2] In the agreement, Coomes acknowledged that she voluntarily surrendered her Virginia producer's license "*in lieu of a hearing* before the State Corporation Commission, which [Coomes] understand[s] may result in revocation or suspension of [Coomes's] authority as an insurance agent or consultant, as well as possible

---

[2] The date on the "Voluntary Surrender of Insurance Agent or Consultant License Authority" agreement read "to be effective March 11, 2013." Both parties agree that Coomes signed the agreement on December 10, 2012.

monetary penalty." (Emphasis added). Coomes voluntarily surrendered "all authority . . . to conduct the business of insurance or insurance consulting in the Commonwealth of Virginia." The agreement further provided that "[i]n consideration of the Commission's acceptance of [the] voluntary surrender of [her] license authority in lieu of a hearing before the Commission . . ." Coomes agreed not to apply to "transact the business of insurance in Virginia for a period of one year" from the date of the agreement, and only after she had resolved all of her "financial obligations resulting from [her] insurance activities." Further, the language of the agreement refers to the agreement as an "*action* . . . taken of [Coomes's] own volition." (Emphasis added).

Finally, Coomes acknowledged that she

> under[stood] that notification of this matter, which may include personal information about [Coomes] including, but not limited to [Coomes's] name, residence address, social security number . . . , date of birth, license and appointment status, and investigation or disciplinary action summary data, may be reported to the National Association of Insurance Commissioners and to other state insurance regulatory authorities or other interested parties.

Thereafter, in March of 2013, Coomes requested through a letter to the MIA that her residential address be updated and that her Maryland license be changed from nonresident producer to resident producer. In the letter, Coomes stated "I have notified the Virginia Insurance Bureau of my address change and have requested a voluntary surrender of my Virginia resident license." Coomes did not include in the letter any indication of an investigation by the VDI into her mishandling of money, nor did Coomes disclose that she had agreed to voluntarily surrender her license in lieu of facing a hearing to contest the

6

allegations arising from Anthem's complaint. Coomes testified that she did not understand the voluntary surrender to be an "adverse violation" and did not know that there was a requirement that she inform the MIA of the VDI's actions.

*Procedural History*

Pursuant to a revised order issued June 30, 2014,[3] the Maryland Insurance Commissioner ("the Commissioner") issued an order finding the voluntary surrender agreement constituted an "adverse administrative action" that was taken against Coomes. The Commissioner found Coomes to be in violation of I.A. §§ 10-126(a)(1), (6), (12), (13), and (f), and therefore, subject to discipline. The Commissioner revoked Coomes's license to act as an insurance producer in the State of Maryland and ordered her to pay an administrative penalty of $1,250.00 within 30 days. The pertinent provisions of I.A. § 10-126 are as follows:

> (a) The Commissioner may deny a license to an applicant under §§ 2-210 through 2-214 of this article, or suspend, revoke, or refuse to renew or reinstate a license after notice and opportunity for hearing under §§ 2-210 through 2-214 of this article if the applicant or holder of the license:
>
> > (1) has willfully violated this article or another law of the State that relates to insurance;
> >
> > . . .

---

[3] The Commissioner issued the original order on November 25, 2013, which revoked Coomes's license and assessed an administrative penalty of $500.00. In the original order, the Commissioner found that Coomes violated I.A. §§ 10-126(a)(13) and 10-126(f). The June 30, 2014 Order added I.A. § 10-126(a)(1), (6) and (12).

(6) has committed fraudulent or dishonest practices in the insurance business;

. . .

(12) has failed or refused to pay over on demand money that belongs to an insurer, insurance producer, or other person entitled to the money;

. . .

(13) has otherwise shown a lack of trustworthiness or competence to act as an insurance producer;

. . .

(f)(1) Within 30 days after the final disposition of the matter, an insurance producer shall report to the Commissioner *any adverse administrative action* taken against the insurance producer:

*(i) in another jurisdiction*; or

(ii) by another governmental unit in this State.

(2) The report shall include a copy of the order, consent order, and *any other relevant legal documents*.

I.A. § 10-126(a)(1), (6), (12), (13) and (f) (emphasis added).

Coomes requested a hearing on the Commissioner's order, pursuant to I.A. § 2-210 and COMAR 31.02.01.03. Coomes appeared before a Commissioner on November 5, 2014 on the MIA's Motion for Summary Disposition, during which Coomes testified but did not call any other witnesses. On December 9, 2014, the Commissioner issued a revised final order granting the MIA's Motion for Summary Disposition, and finding that Coomes violated I.A. §§ 10-126(a)(1), (6), (12), (13), and (f). The Commissioner ordered that Coomes's license be revoked and that she pay an administrative penalty of $1,250.00 within forty-five days of the order.

8

On January 7, 2015, Coomes filed a petition for judicial review in the Circuit Court for Baltimore City. A hearing was held before the circuit court on November 9, 2015, and on November 30, 2015, the circuit court affirmed the decision of the MIA.

For the reasons explained below, we affirm the Circuit Court for Baltimore City.

## DISCUSSION

### I.   Standard of Review

When we review the decision of an administrative agency, such as the MIA, "we assume the same role as the [c]ircuit [c]ourt . . . , and 'limit our review to the agency's decision.'" *McClanahan v. Washington Cty. Dep't of Soc. Servs.*, 445 Md. 691, 699 (2015) (quoting *Cosby v. Dep't of Human Res.*, 425 Md. 629, 637 (2012)); *see also People's Counsel for Baltimore Cty. v. Surina*, 400 Md. 662, 681 (2007) ("When . . . any appellate court reviews the final decision of an administrative agency . . . the court looks through the circuit court's . . . decisions, although applying the same standards of review, and evaluates the decision of the agency.") (citing *Mastandrea v. North,* 361 Md. 107, 133 (2000)). In reviewing administrative adjudicatory decisions, our task

> is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.
>
> . . .
>
> [A] court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's

9

> interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

*Maryland Aviation Admin. v. Noland*, 386 Md. 556, 571-72 (2005).

Even if we grant some degree of deference to the agency's legal interpretations, we must correct a legal conclusion that is erroneous. *McClanahan*, 445 Md. at 700 (citing *Cosby,* 425 Md. at 639). Notwithstanding "some deference" to "an agency's legal interpretation of the statute it administers," *Taylor v. Harford Cnty. Dep't of Social Servs.,* 384 Md. 213, 222 (2004), issues of statutory interpretation are legal issues for which the standard of review is *de novo*. *Falls Road Community Ass'n v. Baltimore Cnty.*, 437 Md. 115, 134 (2014).

Pursuant to COMAR 31.02.01.07.G, which regulates the hearing procedure within the MIA, "[a] party may move for summary decision on any appropriate issue in the case." COMAR 31.02.01.07(G). Like summary judgment, "[a] hearing officer may grant a proposed or final summary decision if the hearing officer finds that: (a) There is no genuine issue of material fact; and (b) [a] party is entitled to prevail as a matter of law." *Id.*; *cf.* Md. R. Civ. Proc. 2-501(f). "For summary judgment purposes, '[a] material fact is a fact the resolution of which will somehow affect the outcome of the case.'" *Rogers v. Home Equity USA, Inc.*, 228 Md. App. 620, 635 (2016) (quoting *Pence v. Norwest Bank Minn., N.A.*, 363 Md. 267, 279 (2001)). In this case, there were no issues of material fact in dispute.

**II.** **The Commissioner Did Not Err as a Matter of Law by Finding that Coomes's Voluntary Surrender of her Producer's License was an "Adverse Administrative Action" and Failure to Report the Action Violated I.A. § 10-126(a)(13) and (f).**

The Commissioner found that Coomes "failed to report to the Commissioner [an] adverse administrative action taken against" her when she did not report her agreement to voluntarily surrender her license in lieu of a hearing before the State Corporation Commission within 30 days. As a result, Coomes violated I.A. § 10-126(f). By failing to report the administrative action to the MIA, the Commission found that Coomes also violated I.A. § 10-126(a)(13), which provides that a license may be revoked if the license holder "has otherwise shown a lack of trustworthiness or competence to act as an insurance producer."

In this appeal, Coomes raises several arguments. The question we must answer, however, is whether the Commissioner's conclusion that Coomes failed to report an "adverse administrative action" in violation of I.A. § 10-126(f) was based on an erroneous conclusion of law. In other words, we examine whether the VDI's investigation and Coomes's acceptance of the voluntary surrender agreement in lieu of a hearing constitutes an "adverse action" for purposes of I.A. § 10-126(f). If so, she was required to report the action and submit relevant legal documents; therefore, a failure to do so would constitute a violation of I.A. § 10-126(f).

For the reasons explained herein, the investigation and subsequent voluntary surrender agreement in Virginia constitutes an "adverse administrative action" such that Coomes was required to report it, as well as submit a copy of the voluntary surrender

11

agreement to the MIA. Further, substantial evidence of Coomes's actions leading to the Commissioner's finding that Coomes violated I.A. § 10-126(f) also supported the Commissioner's finding that Coomes had violated I.A. § 10-126(a)(13) -- i.e., that Coomes "otherwise show[ed] a lack of trustworthiness or competence to act as an insurance producer." I.A. § 10-126(a)(13).

A.    **The Voluntary Surrender Agreement with the Virginia Department of Insurance Constituted an "Adverse Administrative Action" under I.A. § 10-126(f).**

In the Final Revised Order, the Commissioner concluded that there was "no genuine dispute as to the material facts relating to whether [Coomes] failed to report the Virginia Bureau action to the Commissioner as required by § 10-126(f)." As the Commissioner aptly framed the issue:

> [T]here is no factual dispute regarding whether [Coomes] reported the Virginia action to the Commissioner at any time; she did not. Thus, the question is whether the Virginia action was an adverse administrative action such that Respondent had an obligation to comply with § 10-126(f), which is a question of law.

Coomes's arguments that her voluntary surrender of her producer's license in Virginia was not an "adverse administrative action" revolve around two main points: (1) The plain language of the statute indicates that an evidentiary proceeding is required to constitute an "adverse administrative action"; and (2) the structure of I.A. § 10-126 and "the context of procedural due process jurisprudence" in which these terms are situated require a formal evidentiary proceeding to constitute an "adverse administrative action."

12

Coomes maintains that, based on the plain language, "where the revocation of an insurance producer's license is involved, only a formal or informal proceeding that includes fact-finding and dispute resolution and results in an Order" constitutes an adverse action. Thus, because "[a] voluntary surrender of a license does not involve either fact-finding or dispute resolution," it must not be an "adverse administrative action" such that Coomes was required to report it. Coomes provides no authority, however, to support her contention that the terms "adverse" and "action" imply a fact-finding, evidentiary proceeding.

When the General Assembly does not define precisely "a particular statutory term, we first look to the plain meaning of the term, and give that language its 'ordinary and natural meaning [without] resort to subtle or forced interpretations' . . . ." *Bennett v. State Dep't of Assessments & Taxation*, 143 Md. App. 356, 368 (2001) (citing *Maryland–Nat'l Capital Park & Planning Comm'n v. Dep't of Assessments & Taxation*, 110 Md. App. 677, 689 (1996), *aff'd*, 348 Md. 2 (1997)) (alterations in original). Our interpretation of statutes often requires that we consider "the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Bennett*, *supra*, 143 Md. App. at 369 (quoting *Chesapeake Charter, Inc. v. Anne Arundel Cnty. Bd. of Educ.,* 358 Md. 129, 135 (2000)). The ordinary meaning of the term "adverse administrative action" would encompass the facts of this case, namely Coomes's agreement with the VDI to voluntarily

13

surrender her producer's license to end the investigation into her conduct and avoid a hearing that could result in the revocation of her license and other penalties.

Even assuming the term "adverse administrative action" is ambiguous, we interpret the statute as a whole in a way that "avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Id.* at 368. The Commissioner rejected Coomes's interpretation of I.A. § 10-126(f) in holding that:

> On a practical note, under Respondent's theory, a producer with a Maryland license could always avoid regulatory oversight in Maryland for improper activities done in every other state by voluntarily giving up her license in that other state.

Coomes's agreement to voluntarily surrender her producer's license in lieu of a hearing for a minimum of one year and until she had repaid the money to Anthem clearly falls within the meaning of "adverse" as the word is used in the statute. The Commissioner highlighted a similar point:

> Applying the ordinary, popular understanding of the English language word "adverse," [Coomes] giving up her producer's license, a key requirement in her employment, for a year was adverse to her interests, and the Voluntary Surrender Agreement with the Virginia Bureau was a relevant legal document relating to that transaction under § 10-126(f).

Notably, Coomes agreed to voluntarily surrender her license *in lieu of a hearing*, which could have resulted in the revocation of her Virginia license in addition to Coomes incurring fines. Within the agreement, Coomes acknowledged that, as a result of the surrender of her license, the VDI or others could notify "the National Association of

14

Insurance Commissioners and other state insurance regulatory authorities or other interested parties" of the "investigation or disciplinary action summary data." The reasonable interpretation of the terms of the agreement as a whole is that it was adverse in nature. The agreement benefitted Coomes by allowing her to avoid hearings on her conduct, which could have resulted in the revocation of her license, rather than her agreement not to reapply for one year, as well as other fines and penalties. The Commissioner, therefore, found that Coomes "was required to report the matter to the Commissioner within 30 days of its final disposition under § 10-126(f)." We agree.

Coomes's additional reasons supporting her contention that the facts in the instant case did not constitute an "adverse administrative action" are equally unavailing. Coomes asserts that "the structure and context of Section § 10-126 supports the conclusion that the General Assembly intended to require the licensee to report only adjudicated 'adverse administrative actions' that include fact-finding and dispute resolution and result in an Order." In the same vein, Coomes argues that the phrase "'adverse administrative action' arises in the context of procedural due process jurisprudence" and therefore requires an evidentiary proceeding. Again, however, Coomes points to no legal authority for this contention, whether in the context of administrative proceedings or otherwise.

Coomes does cite to a myriad of United States Supreme Court and out-of-state court cases in an attempt to support her contention that "the more significant the private interest involved, such as loss of livelihood, the more likely only a pre-deprivation, evidentiary hearing incorporating dispute resolution and [fact-finding] will be required to satisfy

15

procedural due process . . . ."  Further, Coomes adds, "the failure to provide the requisite standard of procedural due process results in the invalidation of the administrative action revoking the license."  She continues, "[b]alancing the due process factors, it would appear that Petitioner's interest in her livelihood is a paramount . . . consideration . . . , warranting not only a hearing prior to deprivation but also an adjudicatory hearing prior to deprivation."

As much emphasis as Coomes places on the importance of an evidentiary hearing, it is unclear whether Coomes is concerned with the lack of an evidentiary hearing in the instant case below, or rather, as a result of Coomes's agreement to voluntarily surrender her license in Virginia, which Maryland's statute required Coomes to report to the MIA. Regarding the Virginia events, after the investigation began, Coomes was given the option to voluntarily surrender her license for a minimum of one year in lieu of a hearing on charges that the VDI could otherwise bring against her.  Coomes, therefore, cannot now argue that because Coomes chose to bypass an evidentiary hearing in Virginia, "the administrative action revoking the license" is now "invalid."  Moreover, to the extent that Coomes, in this appeal, refers to the Commissioner's revocation of Coomes's Maryland license upon Summary Disposition in this case, Coomes had the opportunity and did participate in an evidentiary hearing before the Commissioner.

Assuming Coomes is concerned with the lack of an evidentiary hearing in Virginia, her contention is that, because Coomes opted to voluntarily surrender her license, the action was not an "adverse action" such that she was not required report it.  Simply put, Coomes's

16

argument requires us to read more into the statute than is evident by its plain, ordinary meaning. *See Stickley v. State Farm Fire & Cas. Co.*, 431 Md. 347, 359 (2013) ("In construing the plain language, a court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.") (quoting *Bowen v. City of Annapolis*, 402 Md. 587, 613 (2007)). Nowhere in the language of the statute does it explicitly or implicitly require that a hearing and final order occur alongside an "adverse administrative action" in order for the action to constitute one that the license-holder must report. Critically, Coomes provides no authority to support this contention.

No dispute of material fact exists with regard to Coomes's failure to report the voluntary surrender agreement to the MIA. Coomes, herself, admits that she did not report the investigation or her agreement to surrender her Virginia producer's license as a result of her handling of the two checks sent to her in error. The Commissioner did not err in finding that the voluntary surrender of Coomes's license in Virginia constitutes an "adverse administrative action" under I.A. 10-126(f). Substantial evidence within the record supports the Commissioner's conclusion that Coomes failed to report "an adverse administrative action" within 30 days and failed to include with the report a copy of the voluntary surrender agreement as a "relevant legal document." I.A. § 10-126(f).

To be sure, the MIA could clarify its standards for determining whether a particular event is an "adverse action" such that it must be reported under I.A. § 10-126(f). As Coomes points out, counsel for the agency noted,

> [i]n Virginia, a licensee whose license is *not under investigation* by the Bureau may simply withdraw from the business of insurance . . . Such an action is not adverse to the licensee . . . . However, because her license was under investigation, Ms. Coomes was not given the option of license withdrawal.

In her reply, Coomes presents us with a Maryland case in which the Commissioner found that a withdrawal was, in fact, an "adverse administrative action" such that the producer in that case was required to report the withdrawal. Although it is unclear why the MIA maintains two different positions regarding the effect of how a termination of a license is titled for purposes of reporting adverse administrative actions, that is not a question we must answer. Instead, we focus on whether the facts of this case constitute an adverse administrative action. That task involves taking into account the language of the statute as a whole as well as the specific facts of this case, including the language and practical effect of the voluntary surrender agreement.

Regardless of how the termination of Coomes's license was entitled, the language and consequences of the voluntary surrender agreement demonstrate that Coomes agreed to the surrender as a way to avoid further investigation into her conduct and avoid even greater consequences if she were to pursue a hearing. Nevertheless, the agreement had a detrimental impact on her Maryland license authority. The Commissioner, therefore, did not err in his interpretation and application of the term "adverse administrative action," nor

18

in his finding that Coomes was required to report the Virginia action under these circumstances.

**B.** **Substantial Evidence Supports the Commissioner's Finding that Appellant Failed to Report the "Adverse Administrative Action" and Submit "Relevant Legal Documents" in Violation of I.A. §§ 10-126(a)(13) and (f).**

It is undisputed that Coomes did not notify the MIA of the voluntary surrender agreement within 30 days, and that she did not submit a copy of the voluntary surrender agreement to the MIA. To the extent Coomes argues that she notified the MIA of the adverse administrative action through her letter requesting to update her status from nonresident producer in Maryland to resident producer, we are unpersuaded.

Coomes's letter, which she sent to the MIA on March 27, 2013, requested that her business address and residential addresses be updated and that her Maryland producer license's status be updated to resident producer. Within the letter, however, Coomes stated, "I have notified the Virginia Insurance Bureau of my address change and have requested a voluntary surrender of my Virginia resident license." Coomes did not otherwise report any other aspect of the administrative action against her within 30 days of signing the voluntary surrender agreement. She further did not report the administrative action within 30 days of the initial effective date of the agreement (March 11, 2013), or within 30 days of the final effective date (April 1, 2013). Further, Coomes did not provide a copy of the voluntary surrender agreement, which may have communicated the adverse nature of the surrender.

As the Commissioner notes, we affirmed the MIA's decision to revoke an insurance producer's license for violating I.A. § 10-126(f) where the attorney/insurance producer had informed the MIA that an attorney misconduct investigation was underway, merely directed the MIA to the Attorney Grievance Commission for further details, and failed to update the MIA on the disposition of the case. *See Culver v. Md. Ins. Comm'r*, 175 Md. App. 645, 541 (2007). The Commissioner explained the following:

> [Coomes] . . . was even less forthcoming than the producer in the *Culver* case. There, the producer at least mentioned the body that was investigating him. Here, Ms. Coomes downplayed the information about the voluntary surrender of her Virginia license by slipping that information [in] the middle of a letter primarily about changing her addresses, with no reference to the Virginia Bureau. That did not meet the standard of a report to the Commissioner about an adverse administrative action.

In this appeal, Coomes reasons, "[i]f a 'voluntary surrender' is such an obvious 'adverse administrative action' as is evidently believed, then the regulator surely should have recognized the implication of the information that was being conveyed." In this case, however, the language and terms of the voluntary surrender agreement would have indicated the adverse nature of the "voluntary surrender," even if the title of the administrative action would not make its adverse nature apparent in all circumstances. This is particularly so because the adverse administrative action occurred in another state. Coomes gave no indication that she surrendered her license in Virginia in lieu of a hearing, that she would not be able to reapply for a license in Virginia for a minimum of one year or until she had repaid money to an insurer, or that she was reporting an "adverse

20

administrative action" pursuant to I.A. § 10-126(f). We, therefore, agree with the Commissioner's finding that "[Coomes's] cryptic mention of the voluntary surrender of her Virginia license did not satisfy the requirements of I.A. § 10-126(f)." The Commissioner's decision was therefore supported by substantial evidence in the record that Coomes violated I.A. § 10-126(f).

In addition to finding that Coomes violated I.A. § 10-126(f), the Commissioner found that Coomes violated I.A. § 10-126(a)(13), which permits revocation if the license holder "has otherwise shown a lack of trustworthiness or competence to act as an insurance producer." I.A. § 10-126(a)(13). There is no dispute as to the facts the Commissioner relied upon to reach this conclusion -- Coomes did not report the investigation or voluntary surrender agreement to the MIA or submit the required documents as required. Indeed, the Commissioner suggested that Coomes may have attempted to lessen the significance of the voluntary surrender agreement by mentioning its existence in the context of requesting to update her residential and business addresses and her status as a resident producer in Maryland. Further, the Commissioner noted that not only did Coomes fail to submit a copy of the voluntary surrender agreement with notice of the adverse administrative action within 30 days, she also failed to produce a copy of the agreement even after the MIA requested relevant documents from the Virginia action. The Commissioner explained:

> Respondent's failure to report the Virginia Bureau matter to the Commissioner in violation of § 10-126(a)(f) and her attempt to downplay the Virginia action by disclosing the surrender of her Virginia license in the middle of an otherwise unrelated letter show a lack of trustworthiness to act as an insurance producer, or at least a lack of competence. Further,

21

Respondent's failure or refusal to provide a copy of the Voluntary Surrender Agreement when asked by the MIA for documents related to the Virginia action also shows untrustworthiness or incompetence. The Respondent's uncontested actions and inactions support the MIA's finding that she lacks trustworthiness and/or competence to act as an insurance producer in Maryland.

The Commissioner pointed to evidence in the record such as "[Coomes's] own words in her Affidavit, testimony and correspondence with regulators and with Anthem." Certainly, substantial evidence supported the Commissioner's finding that Coomes violated I.A. § 10-126(a)(13) based on her failure to notify the MIA of the adverse nature of her voluntary surrender and to submit relevant legal documents associated with it. There were no material facts in dispute regarding the Commissioner's findings that Coomes violated I.A. §§ 10-126(a)(13) and (f), and the MIA was entitled to summary disposition as a matter of law.

### C. Coomes's Intent and Subjective Belief were Immaterial Regarding I.A. §§ 10-126(a)(13) and (f).

Coomes makes several arguments that her subjective intent was a necessary element for a finding that a violation occurred. With respect to I.A. § 10-126(f), nothing in the statute requires that the license holder hold the subjective belief that the action in another jurisdiction was "adverse"-- i.e., that the action must be reported to the MIA. The Commissioner explained,

> In her defense, [Coomes] argues that she did not believe that the Virginia Bureau matter involved an adverse administrative action . . . . However, [Coomes] presented no legal argument supporting the theory that her subjective belief as to the nature

22

of the Virginia matter excuses her from complying with § 10-126(f).

Additionally, pursuant to I.A. § 10-126(a)(13), the Commissioner did not have to find that Coomes intended to deceive the MIA by withholding information regarding the adverse administrative action. As the Commissioner pointed out, in *Culver*, the former insurance producer also argued that I.A. § 10-126(a)(13) requires a showing of willful or intentional misconduct. *See Culver*, 175 Md. App. at 661. There, we explained that "the adverb 'willfully' applies only to Section 10–126(a)(1) and not to the remainder of the section." *Id.* Moreover, we also reasoned that "it would be nonsensical to require a showing of a 'willful' lack of competence as a basis for revocation." *Id.*

### III. The Commissioner's Finding that Coomes Violated I.A. § 10-126(a)(1), (6) and (12) is supported by Substantial Evidence in the Record.

The Commissioner's finding that, in addition to I.A. § 10-126(a)(13) and (f), Coomes's license could also be revoked under I.A. § 10-126(a)(1), (6), and (12), was based on evidence presented in the instant case relating to Coomes's conduct in Virginia. All three subsections are implicated by the same set of facts, namely Coomes's handling of Anthem's checks, which she deposited in error, failed to immediately return, and for which she ultimately surrendered her Virginia producer's license. First, I.A. § 10-126(a)(12) provides that the Commissioner may revoke a license after notice and the opportunity for a hearing if the license holder "has failed or refused to pay over on demand money that belongs to an insurer . . . or other person entitled to the money." Next, subsection (a)(6) allows revocation where the license holder "has committed fraudulent or dishonest

practices in the insurance business." I.A. § 10-126(a)(6). Finally, subsection (a)(1) allows revocation when the license holder "has willingly violated [the Insurance Article] or another law of the State that relates to insurance." I.A. § 10-126(a).

The underlying facts support the Commissioner's finding that Coomes's license was liable for revocation on all three additional grounds. Moreover, the Commissioner summarized the evidence relied upon as follows:

> Ms. Coomes'[s] own words in her Affidavit, testimony and correspondence show that the money belonged to EBCA and/or Anthem and not to Ms. Coomes or her agency. She further concedes that Anthem demanded the immediate payment of the money and that she failed to pay the money back on demand. In fact, she admits that she withheld $2000, contending that Anthem otherwise owed her that amount (Coomes Aff., ¶ 13.), and averred to the MIA that she will never pay Anthem $900 that it seeks from her. (MIA Exh. 5.).

Clearly, the evidence is sufficient to establish that Coomes "failed [and] refused to pay over on demand money that belongs to an insurer . . . or other person entitled to the money." I.A. §10-126(a)(12). The statute provides no exceptions for the license holder's state of mind, subjective belief, or for disputes over who is the rightful owner of the money. There is no question as to whether the money from the two checks sent to Coomes in error belonged to Anthem, that Coomes or one of her employees deposited the checks in error, and that Coomes was not able to immediately return the money when Anthem demanded its return. Coomes took six months to repay most of the money and kept approximately $2,000 as money she believed to be owed to her in an independent matter. Even in a light

24

most favorable to Coomes, based only on these facts, the Commissioner had the authority to revoke Coomes's producer's license pursuant to I.A. § 10-126(a)(12).

In addition to I.A. § 10-126(a)(12), these same facts provided the Commissioner with a basis to revoke Coomes's license under subsections (1) and (6), as well. The Commissioner explained:

> Even after acknowledging that the funds rightfully belonged to Anthem, Ms. Coomes purposefully kept some of it because she felt that Anthem owed it to her for an unrelated reason. That undisputed fact supports the MIA's findings that Ms. Coomes willfully violated the Maryland Insurance Article in violation of § 10-126(a)(1) and that she committed a fraudulent or dishonest practice in the insurance business in violation of § 10-126(a)(6).

Coomes asserts, inaccurately, that "nearly all of the paragraphs or sub-paragraphs of Section 10-126(a) require some finding of 'willfulness' or 'intentionality,'" and lists as examples subsections "10-126(a)(1) ('[w]illfully'); (2) ('intentionally'); (5) 'willfully . . .'); (7) ('with actual intent . . .') . . . etc." "Thus," as Coomes contends, "the licensee's subjective intent or understanding that she was violating the law is made relevant by the statute itself," and even for "paragraphs (a)(1), (6), (12) and (13) the subjective intent or knowledge of the licensee that she was committing an act that was in intentional disobedience to the law is a required finding to revoke the licensee's license." Again, Coomes provides no legal authority in support of this contention. Indeed, Coomes's efforts to highlight the inclusion of explicit intent requirements in some paragraphs of the

25

statute (most of which are not relevant to this case)[4] merely demonstrates that, had the General Assembly wanted to include an intent requirement in the other provisions, it could have done so.

## IV.   The Law of Double Jeopardy Does Not Apply.

Although Coomes can point to no administrative case in Maryland in which a court applied the law of double jeopardy to the revocation of a professional license,[5]  Coomes avers that the Commissioner should have applied the law of double jeopardy to this case. Coomes argues, "[i]f the Virginia Voluntary Surrender Agreement was an adverse administrative action (punishment)[,] Appellant cannot be punished twice for the same alleged offense." As the Commissioner notes, "[a]ny action in Virginia related to asserted violation(s) of that state's insurance laws" whereas "the violations at issue involve

---

[4]   One subpart of I.A. § 10-126 that the Commissioner relied on in revoking Coomes's license includes a specific intent requirement.  *See* § 10-126(a)(1) (giving the Commissioner authority to revoke a license if the licensee "has *willfully* violated this article . . ."). It was established in the record, through Coomes's own testimony, that Coomes willfully withheld money owed to Anthem even after she was aware of the error, in direct violation of § 10-126(a)(12). There is substantial evidence in the record to support the Commissioner's finding of Coomes's violation of § 10-126(1) based on the facts supporting her violation of § 10-126(a)(12)(giving the Commissioner authority to revoke a license if the licensee "has failed or refused to pay over on demand money that belongs to an insurer . . .").

[5]   Based upon our review of Maryland caselaw, we were not able to find a single case in which a petitioner was able to demonstrate that his or her professional license suspension or revocation constituted a "criminal punishment" such that the law of Double Jeopardy applied to shield the proponent from subsequent proceedings.

[Coomes's] failure to comply with Maryland insurance law required as a holder of a Maryland insurance license."

Moreover, Coomes was never put in jeopardy of life or limb, and neither the loss of her Virginia license, and here, her Maryland license, was a "criminal" punishment. In *Hudson v. United States*, the Supreme Court of the United States provided some clarity on this issue:

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance," be described as punishment. [*United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549 (1943)] . . . The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, [*Helvering v. Mitchell,* 303 U.S. 391, 399 (1938); *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975)] ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution"), and then only when such occurs in successive proceedings, *see [Missouri v. Hunter,* 459 U.S. 359, 366, 535 (1983)].

522 U.S. 93, 98–99 (1997) (some citations omitted).

The Court went on to explain that the administrative penalties, such as debarment and money penalties are not criminally punitive such that they may not be imposed once an individual has already been tried criminally for the same conduct:

> [N]either money penalties nor debarment has historically been viewed as punishment. We have long recognized that "revocation of a privilege voluntarily granted," such as a debarment, "is characteristically free of the punitive criminal element." [*Helvering*, *supra*, 303 U.S. at 399 and note 2]. Similarly, "the payment of fixed or variable sums of money [is

27

a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789." [*Id.* at 400].

*Id.* at 104.

In a case in which the Maryland State Board of Pharmacy, an administrative agency, placed a pharmacist on probation and issued fines for her failure to submit renewal paperwork and keep records of her continued education hours, the Court of Appeals held:

> The Board's enforcement of its licensing and disciplinary requirements serve purposes essential to the protection of the public, *which are deemed remedial, rather than punitive*, and therefore are not subject to double jeopardy principles. *See* [*State v. Jones,* 340 Md. 235 (1995)]; [*Ward v. Dept. of Pub. Saf. & Cor. Services,* 339 Md. 343, 350 (1995)] (holding that where the purpose of the penalty is remedial, it is not punishment for double jeopardy purposes); [*McDonnell v. Comm'n on Medical Discipline,* 301 Md. 426, 436 (1984)] (noting that the "purpose of disciplinary proceedings against licensed professionals is not to punish the offender but rather as a catharsis for the profession and a prophylactic for the public").

*Spencer v. Maryland State Bd. of Pharmacy*, 380 Md. 515, 534–35 (2004) (emphasis added).

Here, the MIA had the authority to revoke Coomes's ability to act as an insurance producer in the State of Maryland regardless of whether she had already experienced consequences from her earlier actions in Virginia.[6] Even aside from Coomes's handling

---

[6] On a related note, Coomes's contention that "the Commissioner lacked jurisdiction because the violations charged in sections 10-126(a)(1), (6) and (12) did not

of the two checks in Virginia and subsequent dispute over the money owed, Coomes failed to report the "adverse administrative action" to the MIA and submit relevant legal documents – a clear violation of I.A. § 10-126(f), as well as I.A. § 10-126(a)(13). [7]

## V. The Circuit Court Did Not Err in Denying Coomes's Motion for Leave to Offer Additional Evidence.

The final question we must answer is whether the circuit court erred when it denied Coomes's motion for leave to offer additional evidence. The evidence Coomes sought to have entered was an affidavit from a former insurance producer who testified that she was allowed to surrender her license and wait five years to reapply for licensure. She also described her impression of whether her voluntary surrender was treated as an "adverse administrative action." The circuit court found that even "assum[ing] there are good reasons for failure to . . . offer the evidence in the proceeding below . . . . the evidence . . . is not material."

Subsection 10-222(f) of the State Government Article provides:

---

occur in Maryland" is without merit. Again, Coomes provides no legal authority for this contention. Pursuant to I.A. § 10-126(a), "[t]he Commissioner may . . . revoke, or refuse to renew or reinstate a license after notice and opportunity for hearing under § 2-210 through 2-214 of [the Insurance Article] if the . . . holder of the license" violates any of the provisions listed under I.A. § 10-126(a)(1)-(23). I.A. § 10-126(a). Additionally, I.A. § 10-126(c) provides that "[i]nstead of or in addition to . . . revoking the license, the Commissioner may impose on the holder of the license a penalty of not less than $100 but not exceeding $500 for each violation of this article." I.A. § 10-126(c).

[7] For the same reasons, Coomes's argument that the doctrine of merger should have applied is equally unavailing.

(1) Judicial review of disputed issues of fact shall be confined to the record for judicial review supplemented by additional evidence taken pursuant to this section.

(2) The court *may order* the presiding officer to take additional evidence on terms that the court considers proper if:

(i) before the hearing date in court, a party applies for leave to offer additional evidence; and

(ii) the court is satisfied that:

1. *the evidence is material*; and

2. there were good reasons for the failure to offer the evidence in the proceeding before the presiding officer.

S.G. § 10-222 (emphasis added).

The statute clearly leaves within the discretion of the trial judge the decision whether to order the presiding officer to take additional evidence that was not offered in the proceedings below. The statute provides that the court "*may* order the presiding officer to take additional evidence," and only when certain conditions are met. S.G. § 10-222(f)(2)(ii). Those conditions are that "the evidence is material" and "there were good reasons for the failure to offer the evidence in the proceeding before the presiding officer." *Id.* The circuit court announced its reasoning for denying the request -- that the court was not satisfied that the evidence was material. Under these circumstances, we do not find that the trial judge abused his discretion.

For all of these reasons, we hold that there was substantial evidence in the record to support the Commissioner's findings that Coomes violated I.A. § 10-126(a)(1), (6), (12),

(13) and (f).  We further hold that Coomes failed to demonstrate that the Commissioner's decision was premised on an erroneous conclusion of law.  We, therefore, affirm the decision of the Circuit Court for Baltimore City.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**